Willard D. EASON et al.,
Plaintiffs-Appellants,

v.

GENERAL MOTORS ACCEPTANCE CORPORATION and Dave Waite Pontiac, Inc., Defendants-Appellees.

No. 72–1722.

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 19, 1973.

Decided Dec. 28, 1973.

Certiorari Denied April 22, 1974.
See 94 S.Ct. 1979.

James E. Hughes, James K. Sommer, Indianapolis, Ind., for plaintiffs-appellants.

David B. Hughes, Alan W. Boyd, James M. Secrest, Indianapolis, Ind., for defendants-appellees.

Before KILEY and STEVENS, Circuit Judges, and WYZANSKI,* Senior District Judge.

STEVENS, Circuit Judge.

Plaintiffs are shareholders of a corporation which purchased a car leasing business from one of the defendants. In connection with the transaction, the corporate purchaser issued 7,000 shares of its stock to the seller, and the plaintiffs individually guaranteed certain liabilities assumed by the purchaser. Plaintiffs accuse both defendants of fraud and seek relief under § 10(b) of the Securities Exchange Act of 1934,[1] 48 Stat. 891, 15 USC § 78j(b), and Securities and Exchange Commission Rule 10b–5.[2] The question presented is whether their claim is foreclosed by the so-called *"Birnbaum* rule" which limits private relief for a violation of Rule 10b–5 to persons who were either purchasers or sellers of a security.

The appeal is from an order dismissing plaintiffs' third amended complaint and denying leave to file a fourth. The essential facts are quite simple. Prior to October 31, 1969, one of the defendants (Dave Waite Pontiac, Inc.) operated a Pontiac dealership and also an automobile leasing division. Purchases of cars for the leasing business were financed by General Motors Acceptance Corporation, the second defendant. Bank Service Corporation, a company in which the plaintiffs owned stock, entered into an agreement to purchase the leasing business. As consideration for the business, Bank Service issued 7,000 shares of its stock to Waite and assumed the liabilities of the leasing business, including notes payable to GMAC, and the individual plaintiffs delivered a guarantee of those notes, as well as a guarantee of future liabilities, to GMAC.

---

* Senior District Judge Charles Edward Wyzanski, Jr., of the District of Massachusetts, is sitting by designation.

1. Section 10(b) of the Act provides:
"It shall be unlawful for any person . . . [t]o use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors."

2. Rule 10b–5 provides:
"It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails, or of any facility of any national securities exchange,
"(a) To employ any device, scheme, of artifice to defraud,
"(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
"(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security." 17 CFR § 240.10b–5.

The leasing business failed; Bank Service became insolvent and defaulted on the notes.[3] GMAC then brought suit in a state court to recover on the guarantees. Plaintiffs countered with this federal action, accusing both defendants of fraud and seeking rescission of the guarantees.

Plaintiffs seek to avoid *Birnbaum's* purchaser-seller limitation on private relief under Rule 10b–5 in various ways. They contend that their guarantees were securities which they sold to GMAC; that the underlying notes are securities which they are being forced to purchase; that they were indirect sellers of the 7,000 shares of corporate stock; and, in all events, that the *Birnbaum* limitation should be disavowed in this circuit. Since it would not be necessary to consider stretching the definitions of "purchasers," "sellers," and "securities" if there were no *Birnbaum* rule, we think it appropriate to examine the viability of that rule first. For purposes of decision, therefore, we assume that the only purchase or sale of a security involved in the transaction was the transfer of 7,000 shares of stock from Bank Service to Waite, and we reject the suggestion that plaintiffs should be characterized as "sellers" of that stock. The question which is thus presented is whether, notwithstanding the fact that they were neither purchasers nor sellers of a security, plaintiffs may obtain relief under Rule 10b–5. In answering that question, we first note that a violation of Rule 10b–5 has been alleged and then consider whether any remedy is available to these plaintiffs.

## I.

For present purposes it is conceded that material misstatements and omissions attributable to both GMAC and Waite have been adequately alleged. The 7,000 shares of Bank Service stock were unquestionably "securities" within the meaning of Rule 10b–5. It is also settled that the issuance and delivery of such shares constituted a "sale,"[4] and further, that even though the alleged fraud related to the value of the assets acquired, rather than the value of the security delivered, the deception was "in connection with" the sale of a security.[5] Finally, "the fact that the transaction [was] not conducted through a securities exchange or an organized over-the-counter market is irrelevant to the coverage of § 10(b)." Superintendent of Insurance v. Bankers Life & Casualty Co., 404 U.S. 6, 10, 92 S.Ct. 165, 168, 30 L.Ed.2d 128. In short, defendants do not challenge the conclusion that a violation of Rule 10b–5 has been alleged. Nor would they dispute a federal court's jurisdiction to entertain an appropriate claim by the corporation, Bank Service.[6] The disputed question is whether plaintiffs, as individual shareholders of Bank Service and guarantors of its indebtedness to GMAC, may assert a Rule 10b–5 claim.

## II.

The question of plaintiffs' right to relief has three aspects: (a) whether they have "standing," (b) whether they are protected by the rule, and (c) whether overriding considerations of policy should defeat their claim.

---

3. A subsidiary which operated the business also allegedly became "defunct."

4. See Dasho v. Susquehanna Corp., 461 F.2d 11, 27 (7th Cir. 1972).

5. Hooper v. Mountain States Security Corp., 282 F.2d 195, 201–203 (5th Cir. 1960) cert. denied 365 U.S. 814, 81 S.Ct. 695, 5 L.Ed.2d 693. Not only did the Supreme Court cite Hooper with approval in Superintendent of Insurance v. Bankers Life and Casualty Co., 404 U.S. 6, 10–11, 92 S.Ct. 165, 30 L.Ed.2d

128, but the same analysis is applicable to the transaction in the *Bankers Life* case itself. The fraud related to the use of the proceeds of the sale of Manhattan's bonds, rather than the sale of those bonds or even the price at which Manhattan stock was sold to Begole.

6. Presumably such a claim, at least for rescission, would have no value since the 7,000 shares of Bank Service stock which might be recovered are now worthless.

## A.

Neither the statute nor Rule 10b–5 expressly authorizes a private remedy. Nevertheless, in a 1946 decision which is now universally followed, Judge Kirkpatrick held that a civil action could be maintained by a member of the class "for whose special benefit the statute was enacted."[7] The *Birnbaum* case, decided six years later,[8] has been read as holding that only the purchaser or the seller of a security may maintain such an action; this purchaser-seller limitation has been frequently described as a "standing requirement."

This "standing requirement" may be interpreted in two quite different ways. On the one hand, it may signify that only purchasers or sellers of securities have legal rights that are protected by Rule 10b–5. In this sense, the analysis of the plaintiff's status—that is to say, his relationship to defendant's violation of Rule 10b–5—really determines whether the plaintiff is a person who has suffered a legal wrong.[9]

On the other hand, as the term "standing" is more properly used, it assumes that the plaintiff is a member of the class protected by the rule at issue, and addresses the question whether he has a sufficient interest in a real controversy with the defendant to entitle him to invoke the jurisdiction of a federal court. Thus, for example, although a taxpayer, in common with the rest of the citizenry, may be protected by the rule he invokes, he may lack standing to litigate an issue because of the "case" or "controversy" limitation on the exercise of federal judicial power. Frothingham v. Mellon, 262 U.S. 447, 43 S.Ct. 597, 67 L.Ed. 1078. In this sense, the requirement that the plaintiff must have "standing" raises a jurisdictional question under Article III of the United States Constitution.[10]

The *Birnbaum* rule has been interpreted as a standing requirement in this constitutional and jurisdictional sense.[11] We are satisfied that such an interpretation of *Birnbaum* is unwarranted and we have no doubt that the plaintiffs' interest in the controversy before us is sufficient to satisfy the requirements of Article III. Indeed, the parties with a vital stake in the outcome of the dispute are the individual plaintiffs on the one hand and GMAC on the other. One or the other will suffer a loss of approximately $300,000—the balance allegedly due on the loans made by GMAC to which plaintiffs' guarantees apply. This dispute may certainly be regarded as a "case" or "controversy" between these parties within the meaning of Article III.

---

7. Kardon v. National Gypsum Co., 69 F. Supp. 512, 514 (5E.D.Pa.1946).

8. Birnbaum v. Newport Steel Corp., 193 F.2d 461 (2d Cir. 1952), cert. denied, 343 U.S. 956, 72 S.Ct. 1051, 96 L.Ed. 1356 (A. N. Hand, J.).

9. Cf., Judge Cardozo's classic analysis in Palsgraf v. Long Island Railroad, 248 N.Y. 339, 162 N.E. 99, 100 (1928): "What the plaintiff [seeking to sue in tort] must show is 'a wrong' to herself; i.e., a violation of her own right, and not merely a wrong to someone else, in conduct 'wrongful' because unsocial, but not 'a wrong' to anyone."

10. Professor Wright summarizes the scope of the doctrine as follows:
"The law of standing is almost exclusively concerned with such public law questions as determinations of constitutionality and review of administrative or other governmental action. In theory, of course, it is not so limited. The person suing for breach of contract or for a tort must satisfy the court that he has standing to bring such a suit, but in practice such suits are brought only by persons harmed by the supposed wrong, and his standing to sue is self-evident. It is only where the question is of a public nature that the interested bystander is likely to attempt suit."
C. A. Wright, Federal Courts, § 13, p. 39 (1970 ed.).

11. See Herpich v. Wallace, 430 F.2d 792, 805 (5th Cir. 1970); Mount Clemens Industries, Inc. v. Bell, 464 F.2d 339, 343 (9th Cir. 1972). In the latter case the court stated that the purchaser-seller limitation is "required as a matter of constitutional necessity." See, also, Manor Drug Stores v. Blue Chip Stamps, 492 F.2d 136 at 146 (9th Cir. Oct. 15, 1973), (Hufstedler, J., dissenting).

In the *Birnbaum* case itself Judge Hand made no reference to the Constitution and did not mention the word "standing." The decision in that case turned on the court's evaluation of the kind of conduct which was forbidden by Rule 10b–5. The court concluded that the rule was "directed solely at that type of [manipulative] or fraudulent practice usually associated with the sale or purchase of securities . . . " 193 F.2d at 464. Since the rule at that time was thought to relate only to public sales of securities, the prohibition of that type of activity was quite reasonably understood as intended to afford "protection only to the defrauded purchaser or seller." *Ibid.* As conceived by its author, the purchaser-seller limitation was thus a description of the court's understanding of the class of persons protected by Rule 10b–5.

Instead of stating the issue in terms of standing, we think it is more useful to ask whether the plaintiffs were members of the class for whose special benefit Rule 10b–5 was adopted. This is the inquiry which is suggested in Judge Kirkpatrick's opinion which originally articulated the basis for finding an implied private remedy under Rule 10b–5.[12]

### B.

Judge Hand's formulation of the *"Birnbaum* rule" in 1952 was an identification of the persons to whom Rule 10b–5 "extended protection." Protection against the type of fraudulent practice usually associated with the sale or purchase of securities appropriately extended "only to the defrauded purchaser or seller." In the last two decades, however, the rule has been interpreted to encompass additional types of misconduct and to extend protection to a variety of persons not included within the traditional definition of either purchaser or seller. Thus, issuers,[13] trust beneficiaries,[14] merging corporations,[15] minority shareholders in short form mergers,[16] parties to incomplete transactions,[17] offerees,[18] and others [19]

---

12. Thus, at page 513 of 69 F.Supp. he stated:

"It is also true that there is no provision in Sec. 10 or elsewhere expressly allowing civil suits by persons injured as a result of violation of Sec. 10 or of the Rule. However, 'The violation of a legislative enactment by doing a prohibited act, or by failing to do a required act, makes the actor liable for an invasion of an interest of another if; (a) the intent of the enactment is exclusively or in part to protect an interest of the other as an individual; and (b) the interest invaded is one which the enactment is intended to protect. * * *' Restatements, Torts, Vol. 2, Sec. 286. This rule is more than merely a canon of statutory interpretation. The disregard of the command of a statute is a wrongful act and a tort. As was said in Texas & Pacific R. Co. v. Rigsby, 241 U.S. 33, 39, 36 S.Ct. 482, 484, 60 L.Ed. 874, 'This is but an application of the maxim, Ubi jus ibi remedium.'"

And on the following page:

"The other point presented by the defendants is that, under the general rule of law, civil liability for violation of a statute accrues only to a member of a class (investors) for whose special benefit the statute was enacted—an argument applied to both Sec. 10 and to Rule X–10B–5. Sec. 10 prohibits deceptive devices 'in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.' I cannot agree, however, that 'investors' is limited to persons who are about to invest in a security or that two men who have acquired ownership of the stock of a corporation are not investors merely because they own half of the total issue."

13. Hooper v. Mountain States Security Corp., *supra.*

14. James v. Gerber Products Co., 483 F.2d 944 (6th Cir. 1973).

15. Dasho v. Susquehanna Corp., 380 F.2d 262, 267 (7th Cir. 1967), (Fairchild, J., concurring), cert. denied Bard v. Dasho, 389 U.S. 977, 88 S.Ct. 480, 19 L.Ed.2d 470; see also Dasho v. Susquehanna Corp., 461 F.2d 11, *supra.*

16. Vine v. Beneficial Finance Co., 374 F.2d 627 (2d Cir. 1967), cert. denied 389 U.S. 970, 88 S.Ct. 463, 19 L.Ed.2d 460.

17. A. I. Brod & Co. v. Perlow, 375 F.2d 393 (2d Cir. 1967).

18. Manor Drug Stores v. Blue Chip Stamps, *supra.*

19. See generally A. R. Bromberg, Securities Law: Fraud Sec. Rule 10b–5, § 8.8, (1971).

have been treated as though they were sellers and thereby accorded the protection of the rule. The course of judicial decision since 1952, when *Birnbaum* was decided, has actually recognized that the class of protected persons is broader than merely purchasers and sellers.

The language of Rule 10b–5 itself describes any act or practice which operates as a fraud or deceit "upon any person in connection with the purchase or sale of a security." The Supreme Court has repeatedly stated that this language should be given a broad and flexible construction.[20] Construing the words "any person" to include a purchaser or a seller but no one else is not consistent with that admonition. Nor does the so-called rule really have integrity when the words "purchaser" and "seller" are construed as flexibly as has been necessary in order both to decide 10b–5 cases properly and also to continue to pay homage to the *Birnbaum* rule. Moreover, a formal purchaser-seller limitation is not consistent with the overriding requirement that, in construing the 1934 Act, "form should be disregarded for substance and the emphasis should be on economic reality." Tcherepnin v. Knight, 389 U.S. 332, 336, 88 S.Ct. 548, 553, 19 L.Ed.2d 564.

Congress, the Supreme Court, and the Commission have all used the term "investors" to describe the class of persons protected by Rule 10b–5. Thus, the statutory authorization for the rule refers to the prohibition of deceptive devices "for the protection of investors."[21] And speaking for a unanimous court in Superintendent of Insurance v. Bankers Life & Casualty Co., Justice Douglas stated that the crux of the case was the fact that "Manhattan suffered injury as a result of deceptive practices touching its sale of securities *as an investor.*" 404 U.S. 6, 12–13, 92 S.Ct. 165, 169, 30 L.Ed.2d 128 (emphasis added).[22]

In its brief as amicus curiae in that case, the Securities and Exchange Commission also stressed the statutory purpose, implemented by Rule 10b–5, to protect investors from all forms of securities fraud.[23] Instead of attaching significance to the fact that Manhattan was the seller of the government securities, the Commission stated: "Manhattan not only suffered an injury as a result of the fraudulent dealings in its government securities, it suffered that injury in its capacity as an investor."[24]

Although no Supreme Court holding is inconsistent with the view that only purchasers or sellers of securities are protected by Rule 10b–5, we think the Court's opinions fairly imply that the rule was intended to protect a broader class of persons. The emphasis on the injured party's status as an investor indicates that the protection of the rule extends to persons who, in their capacity as investors, suffer significant injury as a direct consequence of fraud in connection with a securities transaction, even though their participation in the transaction did not involve either the purchase or the sale of a security.

The plaintiffs in this case were certainly "investors" in the transaction which is allegedly tainted by fraud. Their interest as stockholders of Bank Service Corporation was apparently sufficient to induce them to execute substantial personal guarantees. As individual guarantors they were direct parties to the transaction in dispute. If, as plaintiffs have alleged, the transaction was consummated in violation of Rule 10b–5, we believe the plaintiffs, as investors and as principals in the trans-

---

20. See, *e.g.*, Affiliated Ute Citizens v. United States, 406 U.S. 128, 151, 92 S.Ct. 1456, 31 L.Ed.2d 741.

21. See § 10(b) quoted in footnote 1, *supra.*

22. Earlier in the opinion Justice Douglas stated that Manhattan "was injured as an investor through a deceptive device . . . ." 404 U.S. at 10, 92 S.Ct. at 168.

23. "While Congress had no purpose to regulate transactions which comprise no more than internal corporate mismanagement, it sought to protect securities investors, including corporations such as Manhattan, from all forms of securities fraud." Brief for the Securities and Exchange Commission at 23.

24. *Id.* at 29.

action, suffered a legal injury which may be redressed by a federal court.

## C.

In addition to suggesting that the *Birnbaum* rule is constitutionally compelled, it has been argued that the purchaser-seller limitation should be retained to forestall an unmanageable flood of federal litigation,[25] and to preserve national consistency in the interpretation of federal securities legislation.[26] We find neither of these arguments persuasive.

The volume of 10b–5 litigation has already expanded dramatically and will no doubt continue to do so whether or not the purchaser-seller limitation is rejected.[27] The extent to which a refusal to adhere to *Birnbaum* will affect that volume is really a matter of speculation.[28] The fact that the purchaser-seller limitation is unacceptable does not mean that there will be no limit of any kind of the availability of private relief.[29] For in each case the plaintiff will have to demonstrate membership in the "special class" protected by Rule 10b–5 and injury as a direct consequence of the alleged violation. The number of parties who may invoke Rule 10b–5 without the purchaser-seller limitation may not differ materially from the number who would recover by persuading a court to interpret the purchaser-seller concept flexibly.

Assuming, however, that a complete abandonment of *Birnbaum* will significantly increase our workload, we may not for that reason reject what we believe to be a correct interpretation of the statute or the rule. Indeed, the vol-

25. See, *e.g.*, Judge Hufstedler's dissent in Manor Drug Stores v. Blue Chip Stamps, 492 F.2d 136 at 146 (9th Cir. Oct. 15, 1973)

26. See Mount Clemens Industries, Inc. v. Bell, *supra*, 464 F.2d at 342.

27. As Judge Wisdom has noted:
"In recent years, the rule has been applied in such a variety of situations that one can scarcely find an issue of the advance sheets of the Federal Supplement and Federal Reporter that does not contain an opinion on § 10(b). This extraordinary expansion of subject-matter coverage by § 10(b) and Rule 10b–5, coupled with the possibility of extraordinarily great liability, has moved courts to limit the class of persons who may recover to purchasers or sellers of securities." Rekant v. Desser, 425 F.2d 872, 877 (5th Cir. 1970).

28. It is not unlikely that the principal cause of concern about the increase in this type of litigation is an assumption that it will always be much easier to allege and prove a 10b–5 case than a common law fraud case. That assumption may not be warranted because it is not necessarily true that the strict standards of disclosure which appropriately apply to transactions in which there is a dramatic disparity in the parties' access to material information will automatically and totally apply to negotiated transactions in which the parties typically rely on contract warranties and pre-closing inspections or audits as a basis for the investment deci-

sion. A flexible statute which emphasizes the relevance of the context in which a transaction takes place should neither limit its protection to an arbitrarily defined class of purchasers and sellers, nor arbitrarily assume that every purchaser and every seller is entitled to precisely the same disclosure. See Comment, The Prospects for Rule X–10B–5: An Emerging Remedy for Defrauded Investors, 59 Yale L.J. 1120, 1143 (1950).

29. Section 4 of the Clayton Act expressly authorizes "any person . . . injured in his business or property by reason of" an antitrust violation to sue for damages. Although that broad language opened "nearly limitless possibilities" for damage recovery, a case by case evaluation of what may be described either as the "standing" issue or the concept of injury has resulted in a significant limitation on the potential scope of recovery. See generally In re Multidistrict Vehicle Air Pollution M.D.L. No. 31, 481 F.2d 122 (9th Cir. 1973), and the many cases cited therein. We question whether the rejection of the purchaser-seller limitation in Rule 10b–5 litigation will have any more disastrous consequence than the rejection of any one of the "talismanic rubrics" identified in that opinion. Either a "target area" or a "direct injury" analysis would seem preferable to a somewhat tattered purchaser-seller rubric. In any event, we deliberately avoid the temptation to try to formulate a succinct substitute for *Birnbaum*, trusting that the appropriate limits to the rule will best be defined through the process of case by case adjudication.

ume of future litigation that was more clearly predictable as a consequence of the Supreme Court's holding in the *Bankers Life* case was not even mentioned in the Court's opinion as a possible objection to its broadened interpretation of Rule 10b–5 as encompassing the misuse of proceeds of sale. The fear that the volume of 10b–5 litigation may actually impair the effective operation of organized securities markets, see Herpich v. Wallace, *supra*, 430 F.2d at 804, is not, in our opinion, well founded; but if we are wrong, the Securities and Exchange Commission has both the power and the expertise to adopt appropriate amendments to the rule. As the Commission has repeatedly stated, it is now of the view that the purchaser-seller limitation is an artificial restriction inconsistent with the intent of the underlying statute. That view merits our respect.

Nor do we believe that *Birnbaum*, should be followed simply to preserve national consistency in the interpretation of federal securities legislation. We are inclined to think that the extent of the consistency in applying *Birnbaum* is overstated [30] and is less important than an independent appraisal of an important issue arising in an area of the law which, despite the age of the statute, is still in an embryonic stage of development. See Dasho v. Susquehanna Corp., *supra*, 461 F.2d 11, 23 at n. 26. In all events, the only sure way to achieve consistency throughout the federal judiciary on a question of this character is for the Supreme Court to resolve such conflict among the circuits as does exist.

As Judge Sprecher demonstrated in Jannes v. Microwave Communications, Inc., 461 F.2d 525, 528–530 (7th Cir. 1972), the basic holding of *Birnbaum* was repudiated by a unanimous Supreme Court in the *Bankers Life* case. We are convinced that the purchaser-seller limitation is nothing more than an appendage to that holding without independent justification. We hold that it is not part of the law of this circuit.[31]

The judgment is reversed and the case is remanded for further proceedings.

---

30. Bromberg has noted that "the buyer condition has been stretched by broad interpretation to include almost any shareholder affected by a corporate transaction." 2 A.R. Bromberg, Securities Law, § 8.8, p. 222. We also note that our decision in Dasho v. Susquehanna Corp., 380 F.2d 262, *supra*, is frequently cited for the proposition that *Birnbaum* is the law of this circuit. In *Dasho*, however, Judge Fairchild merely explained why the *Birnbaum* formulation would

not defeat plaintiff's claim, since merging corporations are both sellers and purchasers of securities. *Id.* at 269–270, cited with approval in Securities and Exchange Commission v. National Securities, Inc., 393 U.S. 453, 467–468, 89 S.Ct. 564, 21 L.Ed.2d 668.

31. This opinion has been circulated to all judges in regular active service; no judge has requested that the case be reheard *en banc*.