Spero **KARVELAS**, derivatively on behalf of the shareholders of O'Hare Riviera, Inc., and for himself, Plaintiff,

v.

John **SELLAS** et al., Defendants.

No. 74 C 208.

United States District Court,
N. D. Illinois, E. D.

April 30, 1974.

Ware Adams, Constantine G. Drugas, Chicago, Ill., for plaintiff.

Jerome H. Torshen, Robert F. Berrey, Torshen, Fortes & Eiger, Chicago, Ill., for defendants.

## MEMORANDUM OPINION

MARSHALL, District Judge.

Before me is defendants' John Sellas and O'Hare Riviera, Inc. (hereafter "O'Hare") motion to dismiss the complaint pursuant to Rule 12(b)(1) and (6) of the Federal Rules of Civil Procedure.

The complaint is in 3 counts. Count 1 is brought under § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b–5, promulgated thereunder. Count 2 alleges breaches of defendants John and William Sellas' fiduciary duties owed to defendant O'Hare, in violation of the Illinois common law. Count 3 alleges violations of the Illinois Securities Act of 1953.

Jurisdiction of Count 1 is founded on 15 U.S.C. § 78aa [§ 27 of the Securities Exchange Act of 1934]. Jurisdiction of Counts 2 and 3 is founded on the doctrine of pendent jurisdiction.

Defendants move to dismiss Count 1 for failure to state a claim upon which relief can be granted and Counts 2 and 3 for lack of subject matter jurisdiction.

## COUNT 1

Count 1 of the complaint alleges *inter alia* that defendants John Sellas and William Sellas, directors and officers of defendant O'Hare Riviera, Inc., each owned 1/3 of the outstanding common capital stock of O'Hare; that sometime after December, 1972 defendant John Sellas purchased all the shares of O'Hare's common stock owned by defendant William Sellas for a price of $201,-000.00; that said purchase was not submitted to or authorized by the board of directors of O'Hare; that in connection with said purchase defendants John Sellas and William Sellas misappropriated corporate funds to pay for defendant William Sellas' shares of common stock; that said misappropriations were made in the guise of salaries, back wages and loans; that the payments made from the corporate treasury were never revealed to or authorized by the board of direc-

**1012**

tors of O'Hare; that defendants John Sellas and William Sellas represented to plaintiff that personal funds would only be used to effect the purchase of stock by defendant John Sellas; that defendant John Sellas, after purchasing the stock of defendant William Sellas, utilized his shares as collateral for a personal loan, which was used to purchase real estate adjoining the leased premises of O'Hare and that the purpose of said purchase was to divert from O'Hare a corporate opportunity, so that the purchased real estate could be leased to O'Hare for the personal gain of John Sellas.

Essentially, Count 1 of the complaint alleges a scheme to gain a controlling interest of a corporation, to appropriate its assets to cover the purchase price of the controlling interest and to exercise said control of the corporation for the personal gain of defendant John Sellas and to the detriment of the corporation.

Section 10(b) of the Securities Exchange Act of 1934 provides in material part:

> "It shall be unlawful for any person . . . [t]o use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [Securities and Exchange] Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors." 15 U.S.C. § 78j(b).

Securities and Exchange Commission Rule 10b–5 provides:

> "It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of inter-

state, or of the mails, or of any facility of any national securities exchange:

> "(a) To employ any device, scheme, or artifice to defraud,
>
> "(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, or
>
> "(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security."

17 C.F.R. § 240.10b–5.

■ Two conditions must be met for conduct to be brought within the reach of Rule 10b–5. First, the alleged conduct must be of a character described in clauses (a), (b) or (c) of the rule. Second, the alleged fraudulent conduct must occur "in connection with the purchase or sale of any security."

■ The language of Rule 10b–5 interdicts any act or practice which operates as a fraud or deceit upon any person in connection with the purchase or sale of a security. Count 1 certainly alleges an "act" or "practice" within the meaning of Rule 10b–5 which operated as "a fraud or deceit." Defendants argue, however, the plaintiff is not a member of "the class for whose special benefit Rule 10b–5 was adopted" and thus cannot prosecute this action. The contention of the defendants is that since neither O'Hare nor plaintiff participated in the sale of stock between John and William Sellas, plaintiff is precluded from suing in a derivative or individual capacity.

The defendants' argument is but another way of stating the *"Birnbaum"*[1]

---

1.  Birnbaum v. Newport Steel Corp., 193 F.2d 461 (2d Cir.) cert. denied, 343 U.S. 956, 72 S.Ct. 1051, 96 L.Ed. 1356 (1952), involved the sale of control stock at a premium by a controlling shareholder after he had rejected an offer of merger which would have been highly profitable to all stockholders. The Court of Appeals for the Second Circuit held that Section 10(b) and Rule 10b–5 were intended to protect only the parties to securities transactions from fraud and that a private suit under 10b–5 could therefore be brought only by a defrauded purchaser or seller.

rule, which requires a plaintiff seeking private relief to be a "purchaser" or "seller" of securities before bringing suit under 10b–5. How else, then, could one "participate" in a securities transaction?

■ The purchaser-seller limitation enunciated in *Birnbaum, supra,* has been expressly rejected by the Court of Appeals for the Seventh Circuit in Eason v. G.M.A.C., 490 F.2d 654 (7th Cir. 1973). It is the crux of Rule 10b–5 that "any person" who suffers an injury as a result of deceptive or fraudulent practices in the sale or purchase of securities comes within the Rule's protective umbrella.

Taking the allegations of Count 1 as true, O'Hare was injured by the misappropriation of its assets and looting of its corporate opportunities. Plaintiff, an investor in O'Hare, was thus injured by the alleged fraudulent and deceptive acts of defendants. Accordingly, defendants' motion to dismiss on this ground is Denied.

The troublesome question of whether the alleged fraudulent conduct occurred in connection with the purchase or sale of any security remains.

The facts as alleged in Count 1 of the complaint do not involve transactions in which the deception concerns the value of securities or the value of consideration given in exchange for them. Rather, the facts allege a transaction which is part of a larger scheme to defraud O'Hare.

In Superintendent of Life Insurance v. Bankers Life & Casualty Co., 404 U.S. 6, 92 S.Ct. 165, 30 L.Ed.2d 128 (1971), the Supreme Court considered the meaning of the critical "in connection with" clause of Rule 10b–5. The case involved a scheme to buy a corporation and to appropriate its assets to cover the purchase price. Plaintiff, the trustee in bankruptcy of the Manhattan Life Insurance Co., claimed that the defendants had conspired to appropriate the assets of Manhattan through securities transactions. Bankers Life, which had held all of Manhattan's stock, had agreed to sell this stock to one Begole for $5,000,000. Begole, conspiring with certain others, drew a check for the purchase price on the Irving Trust bank. In order to cover this check, Begole and his co-conspirators, after replacing the old board of directors with one of their own choice, prevailed upon the new board to sell United States Treasury bonds and deposit the proceeds in Irving Trust. To conceal this misappropriation, Begole and his co-conspirators perfected a complex scheme by which a second Irving Trust check was issued and used to purchase a certificate of deposit which, by means of an intermediary controlled by the defendants, was pledged as collateral for a loan used to meet this second check. Since the pledge of the certificate as collateral did not appear on Manhattan's books, it seemed as if the bonds had been sold to procure the certificate.

The question presented was whether fraud had been committed in connection with the purchase or sale of any security. In the district court, plaintiffs contended that there was but one pervasive fraudulent scheme, and that all the various security transactions and financial manoeuvres were interrelated and cumulative. The district court dismissed the complaint, holding that (1) the transaction involving the sale of the Treasury bonds was not connected with the fraud since neither the value of the bonds nor the monetary consideration received by the corporation in exchange for the bonds had been misrepresented, and (2) although the original sale of stock to Begole and the later transactions used to conceal the theft of the bond proceeds might have been fraudulent, Rule 10b–5 could not be invoked against these transactions because the allegedly defrauded party, Manhattan, could not be considered either a purchaser or seller of exchange securities. 300 F.Supp. 1083, 1097, 1102 (1969).

The Court of Appeals for the Second Circuit affirmed, adopting the district court's rationale that the sale of the

Treasury bonds was not connected with the fraud and that the sale of stock to Begole did not come under 10b–5 since Manhattan was not a purchaser or seller of exchange securities. But it rested its affirmance with regard to the other securities transactions subsequent to the initial sale of stock to Begole on the grounds that those transactions, like the sale of Treasury bonds, were unaffected by the fraud. 430 F.2d 355, 359–361 (2d Cir. 1970).

The Supreme Court reversed, holding that the theft of the consideration received from the sale of the Treasury bonds was sufficiently connected with that transaction to bring the misappropriation within the reach of Rule 10b–5. The crux of the case to the Court was the injury that the investor, Manhattan, suffered as a result of deceptive practices touching the sale of its securities, i. e., the Treasury bonds. 404 U.S. at 12–13. The Court, however, reserved judgment on whether 10b–5 can be employed in a private action based on transactions in which the plaintiff was neither a purchaser nor a seller of securities. 404 U.S. at 13–14. Consequently, the Court did not resolve the issue of whether there was fraud connected with the initial sale of stock to Begole.

The Court did not elaborate on the degree of "touching" which is required before the "in connection with" clause is satisfied. Seemingly, however, it is sufficient if a corporate mismanagement scheme includes within it as an essential act a securities transaction, the motive of which is to further the purposes of the scheme. That was the case in *Bankers Life* and that is the case here.

■ Count 1 of the complaint alleges that defendant John Sellas entered into a scheme whereby he purchased control of O'Hare from William Sellas, misrepresented the source of the consideration for the purchase, misappropriated corporate funds from O'Hare to pay William Sellas and thereafter used the control of O'Hare for his personal gain and to the detriment of O'Hare. Assuredly, under the allegations of Count 1, there was a mismanagement scheme, an essential part of which was the acquisition of a controlling share of O'Hare. The motivating force behind the purchase of control was to further the broader purpose of the scheme, *viz.*, to loot O'Hare of corporate opportunities for the personal gain of John Sellas.

Defendants argue that Section 10(b) and Rule 10b–5 were directed "solely at that type of misrepresentation or fraudulent practice usually associated with the sale or purchase of securities rather than at fraudulent mismanagement of corporate affairs . . ." [citing *Birnbaum*, 193 F.2d at 464]. The Court of Appeals for the Second Circuit dispelled this argument when in A. T. Brod & Co. v. Perlow, 375 F.2d 393 (2d Cir. 1967), it retracted any language to the effect that Section 10(b) was limited to frauds "usually associated" with securities transactions. There the court observed that Section 10(b) and Rule 10b–5 "prohibit *all* fraudulent schemes," and that "[n]ovel or atypical methods should not provide immunity from the securities laws." After *Brod*, it is no longer possible to rely on *Birnbaum* for the proposition that 10b–5 does not reach transactions which involve fraudulent mismanagement of corporate affairs.

I am unable to find that the plaintiff cannot prove a set of facts in support of his claims under Count 1 which would entitle him to relief. See Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Accordingly, defendants' motion to dismiss Count 1 of the complaint is Denied.

### COUNTS 2 AND 3

■ The final question before me is whether I should exercise pendent jurisdiction over the claims alleged in Counts 2 and 3.

There are two distinct issues in deciding the question of pendent jurisdiction. First is the issue of judicial power to hear the pendent claim. United Mine Workers v. Gibbs, 383 U.S. 715, 86 S.Ct.

1130, 16 L.Ed.2d 218 (1966), indicates that judicial power exists:

> "whenever there is a claim 'arising under [the] Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority' . . . and the relationship between that claim and the state claim permits the conclusion that the entire action before the court comprises but one constitutional 'case.' The federal claim must have substance sufficient to confer subject matter jurisdiction on the court. . . . The state and federal claims must derive from a common nucleus of operative fact. But if, considered without regard to their federal or state character, a plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding, then, assuming substantiality of the federal issues, there is *power* in federal courts to hear the whole."

*Id.* at 725.

Assuming *arguendo* that there exists power to hear the pendent claim, pendent jurisdiction is a doctrine of discretion. In resolving the issue of pendent jurisdiction, the Court, in *Gibbs*, suggested *inter alia* that the judicial economy, convenience and fairness to the litigants should be considered; that needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties; that the possibility of jury confusion justifies separating the state issues and federal claims and that if the state issues substantially predominate, the state claim should be dismissed without prejudice. United Mine Workers v. Gibbs, 383 U.S. 726–727.

 Count 1 of the complaint states a substantial federal cause of action against the defendants under the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) and Rule 10b–5, promulgated thereunder. The federal and state claims alleged against the defendants derive from a common nucleus of operative facts, *viz.*, the alleged purchase of stock by John Sellas from William Sellas.

The pivotal issue as to both the federal and state claims is the lawfulness of the purchase of stock and the other acts occurring prior and subsequent to the purchase. Thus, the nature of plaintiff's claims are such that they should be litigated all in one judicial proceeding. Furthermore, a joint trial would serve judicial economy and convenience, without any apparent adverse effect on the fairness to the litigants.[2]

The exercise of pendent jurisdiction does not require the joinder of an entirely new party, which is implicated in the litigation only with respect to the pendent claim.

Accordingly, defendants' motion to dismiss Counts 2 and 3 is denied.

---

2. See Hagans et al. v. Lavine et al., 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974), wherein the Court stated, "First, it is evident from *Gibbs* that pendent state law claims are not always, or even almost always, to be dismissed and not adjudicated. On the contrary, given advantages of economy and convenience and no unfairness to litigants, *Gibbs* contemplates adjudication of these claims."