EMISCO INDUSTRIES, INC., an Illinois Corporation, and I. L. Grossman, Inc., an Illinois Corporation, Plaintiffs-Appellants,

v.

PRO'S INC. et al., Defendants-Appellees.

No. 75–1799.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 9, 1976.

Decided Oct. 29, 1976.

John J. Berwanger, Chicago, Ill., for plaintiffs-appellants.

Dominic J. Mancini, Roy C. Palmer, Chicago, Ill., for defendants-appellees.

Before CASTLE, Senior Circuit Judge, and SWYGERT and CUMMINGS, Circuit Judges.

SWYGERT, Circuit Judge.

Emisco Industries, Inc. and I. L. Grossman, Inc. appeal from the district court's dismissal of their complaint brought under section 27 of the Securities Exchange Act of 1934, 15 U.S.C. § 78aa, for an alleged violation of section 10(b) of the act, 15 U.S.C. § 78j, and Rule 10b–5, 17 C.F.R. § 240.10b5, promulgated thereunder. The

appeal involves an interpretation of the federal securities laws in determining whether there exists subject matter jurisdiction to entertain the complaint.

In February 1973 Grossman purchased the assets of the Parade Division of defendant-appellee Pro's Inc.[1] As consideration, Grossman paid $36,000 in cash, gave a five-year promissory note for $114,000, and assumed certain of Parade's liabilities. Emisco, Grossman's parent corporation, guaranteed the note. Grossman and Emisco assert that material misrepresentations were made by the defendants in the transaction.[2] On defendants' motion to dismiss, the district court found that it lacked subject matter jurisdiction because the transaction did not involve a security within the meaning of section 3(a)(10) of the Securities Exchange Act of 1934, 15 U.S.C. § 78c(a)(10).[3]

The issue in this appeal is whether the note given by Grossman, as partial consideration for purchase of the assets of Parade, is a security within the definition of the act. We recently expressed some views on this question in *C.N.S. Enterprises, Inc. v. G & G Enterprises, Inc.*, 508 F.2d 1354 (7th Cir. 1975), *cert. denied*, 423 U.S. 825, 96 S.Ct. 38, 46 L.Ed.2d 40 (1975). After considering that the definitional section of the 1934 Act begins with the phrase, "unless the context otherwise requires," we indicated that the text of the statute must be read in light of "context," that is, the surrounding factual circumstances. We held that although the statute defining a security includes "any

note," not all notes are securities within the meaning of the act.

Our views have been buttressed by the more recent opinion of the Supreme Court in *United Housing Foundation, Inc. v. Forman*, 421 U.S. 837, 95 S.Ct. 2051, 44 L.Ed.2d 525 (1975). There alleged misrepresentations occurred in apartment leasing arrangements in a massive housing cooperative. The fact that the evidence of the advance sum necessary to entitle a prospective tenant to a lease was called "stock" was held by the Supreme Court to be insufficient to bring the transaction within the purview of the Securities Exchange Act of 1934. Because the "stock" in question did not possess characteristics generally associated with investments in the form of stock, such as the right to receive dividends which would indicate their investment nature, the Court held that the federal securities laws could not be invoked.

*United Housing Foundation* recognized that a distinction must be made between an investment transaction on the one hand and a commercial or consumer transaction on the other when construing the term "security." The Court went on to say that, "The focus of the [Securities] Acts is on the capital market of the enterprise system: the sale of securities to raise capital for profit-making purposes, the exchanges on which securities are traded, and the need for regulation to prevent fraud and to protect the interest of investors." The Court also said that the basic test for a security, found in

1.  Both Grossman and its parent Emisco have their principal places of business in Northbrook, Illinois. Pro's Inc. has its principal place of business in Chicago, Illinois. The main business of Pro's Parade Division was the sale of fried chicken breading and related products.

2.  Besides Pro's Inc., the named defendants are Harold C. Mize, general manager of Parade, William Tivener, purchasing agent for Parade, and William P. Nicholas, owner of Frozen Food Products.

3.  15 U.S.C. 78c(a)(10) reads:
    The term "security" means any note, stock, treasury stock, bond, debenture, certificate of interest or participation in any profit-sharing agreement or in any oil, gas, or other mineral royalty or lease, any collateral-trust certificate, preorganization certificate or subscription, transferable share, investment contract, voting-trust certificate, certificate of deposit, for a security, or in general, any instrument commonly known as a "security"; or any certificate of interest or participation in, temporary or interim certificate for, receipt for, or warrant or right to subscribe to or purchase, any of the foregoing; but shall not include currency or any note, draft, bill of exchange, or banker's acceptance which has a maturity at the time of issuance of not exceeding nine months, exclusive of days of grace, or any renewal thereof the maturity of which is likewise limited.

*SEC v. W. J. Howey Co.*, 328 U.S. 293, 301, 66 S.Ct. 1100, 1104, 90 L.Ed. 1244 (1946), is: "whether the scheme involves an investment of money in a common enterprise with profits to come solely from the efforts of others," which is in contrast to a transaction where "a purchaser is motivated to use or consume the item purchased."

■ In determining whether the stock in *United Housing Foundation* was a "security," the Court examined the characteristics of the instruments involved and the nature of the transaction. It was guided by the holding in *Tcherpnin v. Knight*, 389 U.S. 332, 88 S.Ct. 548, 19 L.Ed.2d 564 (1967), that "form should be disregarded for substance and the emphasis should be on economic reality." As the *United Housing Foundation* and our own decision in *C.N.S. Enterprises* demonstrate, the key to interpretation of "security" is found in the commercial/consumer-investment dichotomy. Although both parties agree that this is the proper test to be applied, the disagree in its application to the facts of this case.

■ In oral argument Grossman took the position that Pro's was an investor in the note given in exchange for Parade's assets. Economic reality, however, shows otherwise. When analyzed economically the facts dictate that the note was accepted as a cash substitute. Pro's was interested in selling the business assets of its Parade Division to Grossman. Acceptance of the note in lieu of cash was more in the nature of a loan to Grossman of the purchase money than an investment in the note. From this aspect, the transaction vis-à-vis Pro's was clearly a commercial one and similar to the transactions in *C.N.S. Enterprises*. The notes in that case were given to a bank which loaned the money necessary for the purchase of a business. We found the transaction to be a commercial one having none of the characteristics of an investment. Although that case involved a third party—the bank—it is sufficiently analogous to the case at bar to make it apposite to our decision.

Equally relevant is *Lino v. City Investing Co.*, 487 F.2d 689 (3d Cir. 1973). In that case a purchaser of certain franchise contracts paid with cash and promissory notes. The Third Circuit found that the notes were not purchased by the seller for speculation or investment; rather, they simply were the means of paying the purchase price. The court concluded that because the transaction was of a commercial nature, the notes did not constitute a security. According to *United Housing Foundation*, "The touchstone [of a security] is the presence of an investment in a common venture premised on a reasonable expectation of profits to be derived from the entrepreneurial or managerial efforts of others." In the case at bar there was no reliance by Pro's on the efforts of plaintiffs to produce profits. It expected Grossman to pay off the note over its five-year term, and, if it failed, expected Emisco, as guarantor, to pay it off. This was the natural expectation (as for any loan), whether or not plaintiffs achieved profits on any of their businesses.

■ Plaintiffs appear to argue in their brief that they, rather than Pro's, are the investors, having invested in the assets of Parade which they purchased in part with their note. There are decisions which hold that if an investment transaction is involved, the Securities Exchange Act of 1934 may be violated even though the fraud relates to the value of the assets given in exchange for a security rather than to the value of the security. *Hooper v. Mountain States Securities Corp.*, 282 F.2d 195 (5th Cir. 1960), *cert. denied*, 365 U.S. 814, 81 S.Ct. 695, 5 L.Ed.2d 693. *See Eason v. General Motors Acceptance Corp.*, 490 F.2d 654, 659 (7th Cir. 1973). This proposition, however, rests on the underlying assumption of an existing investment transaction. If there is no investment and hence no investor, there can be no "security" within the meaning of the act.

As we have shown, Pro's was not an investor in the note. Analysis also demonstrates that Grossman was not an "investor." It is argued that Grossman relied on Pro's past efforts to build up Parade's business before Grossman purchased its assets.

This argument misfires. It is tantamount to saying that Grossman relied on Pro's representations that the business had been built up. This only repeats plaintiffs' allegation of reliance upon misrepresentations made during the purchase. The important element for the transaction to constitute an investment is that Grossman relied on present and future efforts of another to produce profits. As Grossman planned to take over and operate the business of Parade, it is nonsensical to say that it is depending upon Pro's current or future efforts to produce a profit.

As has been noted, reliance on the efforts of others to produce a profit is the most important aspect of an investment, which, in turn, is an essential characteristic of transactions intended to be protected by the federal securities laws. Here there was no such reliance on the part of either party and thus no investment. The transaction involved nothing more than a note used as a cash substitute in the purchase of property. Hence the note did not constitute "a security" within the meaning of the 1934 Securities Act on which plaintiffs premised federal jurisdiction.

The dismissal of plaintiffs' amended complaint is affirmed.

CUMMINGS, Circuit Judge (concurring).

One should look at both sides of the coin. If the seller of an ongoing business was anticipating that the repayment of the purchaser's note would depend upon its conduct of the business, this could be conceptualized as an investment. Similarly, if the purchaser gave its note in reliance upon how well the seller had established the ongoing business, the transaction could also be said to have an investment flavor. These defendants were evidently not depending upon the future conduct of the business sold because Emisco had guaranteed Grossman's note, and at the oral argument plaintiffs eschewed any contention that they were investors. While the giving of a note for an ongoing business might sometimes need "regulation to prevent fraud and to protect the interest of investors" where the issuers of the note were attracted "by financial returns on their investments" (*United Housing Foundation, Inc. v. Forman*, 421 U.S. 837, 849, 853 *, 95 S.Ct. 2051, 44 L.Ed.2d 525), the present setting persuades me to concur.

---

* See also *Movielab, Inc. v. Berkey Photo, Inc.*, 452 F.2d 662, 663–664 (2d Cir. 1971); *Eason v. General Motors Acceptance Corp.*, 490 F.2d 654 (7th Cir. 1973), certiorari denied, 416 U.S. 960, 94 S.Ct. 1979, 40 L.Ed.2d 312; *Alberto-Culver v. Scherck*, 484 F.2d 611, 615 (7th Cir. 1974), reversed on other grounds, 417 U.S. 506, 94 S.Ct. 2449, 41 L.Ed.2d 270; *Occidental Life Insurance Co. v. Pat Ryan & Associates*, 496 F.2d 1255, 1262–1263 (4th Cir. 1974), certiorari denied, 419 U.S. 1023, 95 S.Ct. 499, 42 L.Ed.2d 297; Lipton & Katz, *"Notes" Are (Are Not?) Always Securities*, 29 Business Lawyer 861, 866 (1974). *C.N.S. Enterprises, Inc. v. G & G Enterprises, Inc.*, 508 F.2d 1354 (7th Cir. 1975), is not *contra*, for it involved a purely commercial transaction, namely, the giving of promissory notes in return for a bank loan.