**Thomas VORRIUS, Plaintiff,**

v.

**Robert T. HARVEY, Defendant.**

**No. 81 Civ. 1907 (KTD).**

United States District Court,
S.D. New York.

Aug. 30, 1983.

William A. Despo, Red Bank, N.J., and Ford, Marrin, Esposito & Witmeyer, New York City, for plaintiff; William A. Despo, Red Bank, N.J., of counsel.

Boyle, Vogeler & Tiernan, New York City, for defendant; Kevin Farrelly, New York City, of counsel.

OPINION & ORDER

KEVIN THOMAS DUFFY, District Judge:

On April 1, 1981 plaintiff Thomas Vorrius brought a class action suit against defendants Nelson Ghun & Associates, Inc. ("Nelson Ghun"), a registered commodity trading advisor, Hak S. Ghun, the former president of Nelson Ghun, and Robert T. Harvey, the former general sales manager of Nelson Ghun. The complaint is based on Vorrius' alleged $10,000 investment in a participation offered by Nelson Ghun. The first four counts of the complaint allege that the defendants failed to register this participation in violation of section 12(1) of the

Securities Act of 1933 ("1933 Act") (Count 1); failed to file a "further state notice" or other filing of the participation in violation of the Martin Act (Count 2); made material misrepresentations and omissions that constituted violations of sections 17(a)(1) and 17(a)(2) of the 1933 Act, section 10(b) of the Securities Exchange Act of 1934 ("1934 Act"), the Martin Act, and amounted to common law fraud (Count 3); and defrauded the plaintiff in violation of section 17(a)(3) of the 1933 Act, section 10(b) of the 1934 Act and the Martin Act (Count 4). The final count, Count 5, alleges that the close of Nelson Ghun's business operations breached its contract with the plaintiff. A default judgment was entered on August 18, 1982 against defendants Nelson Ghun and Hak S. Ghun. This judgment resolved Count 5 of the complaint, which was brought solely against defendant Nelson Ghun. A one day bench trial was held before me on February 10, 1983, to resolve the first four counts of the complaint still pending against the remaining defendant Harvey. The following shall constitute my findings of fact and conclusions of law.

## FACTS

Thomas Vorrius, a 1976 graduate of St. Peters College, worked for a computer accessory company before he joined Nelson Ghun in mid-summer of 1980. Plaintiff was hired as a sales trainee to sell commodity managed accounts. His job essentially was to solicit customers for commodity accounts that Nelson Ghun would manage. Defendant Robert Harvey was Mr. Vorrius' supervisor. Mr. Harvey, a 1969 graduate of Georgia Tech, worked for International Nickel of Canada and in the real estate business before joining Nelson Ghun as a sales trainee in January, 1980. He was promoted to salesman in mid-February 1980 and in June of 1980 he was further promoted to sales manager and placed in charge of twenty salesmen, including Vorrius. In August of 1980, Hak Ghun announced to the employees of Nelson Ghun that Robert Harvey had made a sizeable investment in the company. On August 15, 1980, Robert Harvey entered into a loan and employment agreement with Nelson Ghun providing that Harvey would lend the company $70,000. Plaintiff's Exhibit 2. Vorrius, after learning of this investment, approached Harvey to discuss the nature of Harvey's loan. After numerous discussions with Harvey in September and early October of 1980, Vorrius assumed $10,000 of Harvey's loan.

Plaintiff's Exhibit 1, dated October 8, 1980, is a receipt signed by Robert Harvey, as Director of Operations of Nelson Ghun, acknowledging the receipt of $10,000 from Vorrius and enumerating the terms of the agreement. This document provides that Vorrius will receive

Fourty [sic] cents per each round turn trade effected on all our existing or future commodity interest accounts each month for a total of one year from the date hereof, regardless of when said accounts were opened or contributed to by our client.

In the event that payee has not received a minimum of $10,000 with interest thereon computed at the rate of 24% per annum by November 1, 1981, then the balance of $10,000. with interest as aforesaid less the amount paid shall be due and payable.

Plaintiff's Exhibit 1.

Vorrius' purchase of the loan participation in Nelson Ghun coincided with a more general sales pitch by the defendant company. Nelson Ghun, in an attempt to raise money, offered private placements to certain customers. The private placements were available in $5,000 increments and provided for 20 cents per trade and a minimum of a 24 percent return on the investment at the end of the year. The combination of the private placements being offered by Nelson Ghun and the loan agreement between Harvey and Nelson Ghun indicated the company's need to raise money.

On December 15, 1980, Nelson Ghun closed its doors and filed for bankruptcy. Mr. Vorrius never received either a return on his principal or the principal itself. This lawsuit was commenced on April 1, 1981, to

recover $10,000 plus the 24 percent interest owed pursuant to the contract between the parties.

Vorrius, who testified in support of his case, contends that he was unaware of the loan of $10,000 from Harvey and Nelson Ghun documented in plaintiff's Exhibit 2. He argues instead that he believed that he had purchased one of the private placements being offered to Nelson Ghun customers and employees. He further contends that this private placement was a security and that the failure of Nelson Ghun and Harvey to treat the private placement as a security violated a plethora of federal and state securities statutes.

Harvey, who testified in his defense, argues that the loan participation purchased by Vorrius was not a security and alternatively that Harvey was not a "controlling person" of Nelson Ghun subject to liability under the securities laws.

## DISCUSSION

The threshold inquiry herein rests on whether the loan participation purchased by Vorrius rises to the level of a security. If it does not, all the allegations founded on the federal securities laws fall. The definition of a security in both the 1933 Act and the 1934 Act are "essentially the same." [1] *Marine Bank v. Weaver,* 455 U.S. 551, 555 n. 3, 102 S.Ct. 1220, 1223 n. 3, 71 L.Ed.2d 409 (1982); *Funds of Funds, Ltd. v. Arthur Anderson & Co.,* 545 F.Supp. 1314, 1346 (S.D.N.Y.1982). Thus the validity of plaintiff's complaint, in as much as it is based in large part on the federal securities laws for relief, sinks or swims on the legal characterization of the agreement between Vorrius and Nelson Ghun.

The Supreme Court in *Marine Bank* was presented with a certificate of deposit and asked to determine whether it was a security. The Court recognized the potentially all encompassing definitions included in the 1933 Act and the 1934 Act, but noted that the "definition is preceded . . . by the statement that the terms mentioned are not to be considered securities if 'the context otherwise requires . . . .' Moreover, we are satisfied that Congress, in enacting the securities laws, did not intend to provide a broad federal remedy for all fraud." 455 U.S. at 556, 102 S.Ct. at 1223. The Court went on to hold that the unique circumstances surrounding the certificate of de-

1. When used in this subchapter, unless the context otherwise requires—

(1) The term "security" means any note, stock, treasury stock, bond, debenture, evidence of indebtedness, certificate of interest or participation in any profit-sharing agreement, collateral-trust certificate, preorganization certificate or subscription, transferable share, investment contract, voting-trust certificate, certificate of deposit for a security, fractional undivided interest in oil, gas, or other mineral rights, any put, call, straddle, option, or privilege on any security, certificate of deposit, or group or index of securities (including any interest therein or based on the value thereof), or any put, call, straddle, option, or privilege entered into on a national securities exchange relating to foreign currency, or, in general, any interest or instrument commonly known as a "security", or any certificate of interest or participation in, temporary or interim certificate for, receipt for, guarantee of, or warrant or right to subscribe to or purchase, any of the foregoing.

15 U.S.C. § 77b(1) (1976) (The 1933 Act).

(10) The term "security" means any note, stock, treasury stock, bond, debenture, certif-

icate of interest or participation in any profit-sharing agreement or in any oil, gas, or other mineral royalty or lease, any collateral-trust certificate, preorganization certificate or subscription, transferable share, investment contract, voting-trust certificate, certificate of deposit, for a security, any put, call, straddle, option, or privilege on any security, certificate of deposit, or group or index of securities (including any interest therein or based on the value thereof), or any put, call, straddle, option, or privilege entered into on a national securities exchange relating to foreign currency, or, in general, any instrument commonly known as a "security"; or any certificate of interest or participation in, temporary or interim certificate for, receipt for, or warrant or right to subscribe to or purchase, any of the foregoing; but shall not include currency or any note, draft, bill of exchange, or banker's acceptance which has a maturity at the time of issuance not exceeding nine months, exclusive of days of grace, or any renewal thereof the maturity of which is likewise limited.

15 U.S.C. § 78c(a)(10) (1976) (The 1934 Act).

posit transaction, even though literally included within the statutory definition, were outside the bounds of the securities' laws. The unique circumstances included the abundant protections available to the respondents under the federal banking laws and the fact that the agreement was negotiated one-to-one between the parties. The context of the transaction in *Marine Bank* thus required a non-literal reading of the statute.

█ A similar flexibility is warranted in the instant case. The participation purchased by Vorrius, although arguably included within the statutory definition of a security,[2] for numerous reasons does not warrant coverage by the federal securities laws. First, the purchase by Vorrius was the result of a one-to-one negotiation between the plaintiff and Robert Harvey. There is no evidence of other participants or other persons who expressed interest in assuming additional segments of Harvey's loan to Nelson Ghun. Although the number of persons involved is not dispositive of the threshold question herein, it is significant that "[t]he unusual instruments found to constitute securities in prior cases involved offers to a number of potential investors, not a private transaction ...." *Marine Bank,* 455 U.S. at 559, 102 S.Ct. at 1225.

Second, the instant facts do not require the protection of the securities laws. The laws were enacted to protect the investor who "cannot personally watch the manager of all his interests as one horse trader watches another." H.R.Rep. No. 1383, 73d Cong., 2d Sess. 5 (1934). Mr. Vorrius, an employee of Nelson Ghun, was in a position not only to protect his investment but also to determine, in part, the success or failure of Nelson Ghun. It would be inconsistent with the legislative intent of both the 1933 Act and the 1934 Act to ignore the circumstances surrounding Vorrius' investment

and invoke the securities laws to cover a private loan negotiated at arm's length between two willing parties. *Cf. United States v. Namer,* 680 F.2d 1088 (5th Cir. 1982) (loan commitment is not a security); *United American Bank of Nashville v. Gunter,* 620 F.2d 1108 (5th Cir.1980) (participation interest in a loan is not a security); *La Salle National Bank v. Arthur Anderson & Co.,* 531 F.Supp. 702 (N.D.Ill.1982) (promissory notes are not securities); *Provident National Bank v. Frankford Trust Co.,* 468 F.Supp. 448 (E.D.Pa.1979) (loan participation agreement is not a security). *But cf. Commercial Discount Corp. v. Lincoln First Commercial Corp.,* 445 F.Supp. 1263 (S.D.N.Y.1978) (loan participation is a security).

My determination that the loan participation is not a security is consistent with the literal approach adhered to by this Circuit. In *Exchange National Bank of Chicago v. Touche Ross & Co.,* 544 F.2d 1126, 1137 (2d Cir.1976), Judge Friendly, writing for the majority, held that unsecured subordinated notes were securities within the meaning of the 1933 Act and the 1934 Act. The Court's decision emphasized the inclusion of "note" within the Acts' definitional boundaries and concluded that in determining the status of the note in question "the best alternative now available may lie in greater recourse to the statutory language." *Id.* 544 F.2d at 1137. This rigid analysis, rejected by all other Circuits, is still followed in the Second Circuit.[3]

In accordance with the literal approach, the Second Circuit has held in two recent cases that instruments labelled "stock," which have the ordinary characteristics associated with stock, are within the purview of the federal securities laws regardless of the economic reality surrounding the instruments. *Seagrave Corporation v. Vista Resources, Inc.,* 696 F.2d 227 (2d Cir.1982); *Golden v. Garafalo,* 678 F.2d 1139 (2d Cir. 1982). These conclusions were reached de-

---

**2.** The statutes do define a security to include a "participation" in an "investment contract." 15 U.S.C. §§ 77b(1), 78c(a)(10).

**3.** "With the exception of the Second Circuit, every Court of Appeals recently to consider the

issue has rejected the literal approach urged by respondents." *United Housing Foundation, Inc. v. Forman,* 421 U.S. 837, 849 n. 14, 95 S.Ct. 2051, 2059 n. 14, 44 L.Ed.2d 621 (1975).

spite Judge Lumbard's learned dissent in both cases condemning the majority's extension of the "protections of the securities laws to plaintiffs not in need of those protections, thereby adding to the burdens on the federal courts without furthering any of Congress's purposes in enacting those laws." *Golden v. Garafalo,* 678 F.2d at 1147 (Lumbard, J., dissenting). The fact patterns in *Golden* and *Seagrave,* however, are not analogous to the instant case. In both *Golden* and *Seagrave,* the Second Circuit rejected the "Sale of Business Doctrine" and held that the sale of 100 percent of a corporation's outstanding stock constituted the sale of a security. Although these cases reaffirm the Circuit's minority adherence to a strict constructionist view of the statutory definitions of a security, *Golden* also reaffirms the validity of the economic reality test "to govern only the catch-all phrase 'investment contract' in cases involving unusual or unique instruments." *Id.* 678 F.2d at 1146.[4]

The economic reality test places substance over form and allows a court to transcend the name given to an instrument and instead delve into the nature of the transaction between the parties. "The touchstone [of the economic reality test] is the presence of an investment in a common venture premised on a reasonable expectation of profits to be derived from the entrepreneurial or managerial efforts of others." *United Housing Foundation, Inc. v. Forman,* 421 U.S. at 852, 95 S.Ct. at 2060. The evidence adduced at trial, when examined under the *Forman* analysis, leads to the undeniable conclusion that the participation unit Vorrius purchased was not a security. Although Vorrius' investment was made with the reasonable expectation of profits, there was no evidence to support a finding that Vorrius' profits were "to be derived from the entrepreneurial or managerial ef-

forts of others." *Id.* Vorrius, at the time of his investment, was employed to sell commodity accounts managed by Nelson Ghun. His investment was contingent on the continued solvency of Nelson Ghun. Thus, it follows to reason that the financial stability of Nelson Ghun depended, in part, on the success of salesmen like Vorrius in procuring customers. It strains credulity to argue in the face of this uncontroverted evidence that the fate of Vorrius' investment rested solely in the hands of Nelson Ghun. Thus, I find that the transaction between Nelson Ghun and Vorrius does not satisfy the economic reality test as enunciated in *Forman.*[5] The participation, therefore, is not a security entitled to the protection afforded by the securities laws.[6] This conclusion requires dismissal of all the counts of the complaint inasmuch as they rely on the 1933 Act and the 1934 Act for relief.

Resolution of this threshold question in favor of the defendant still leaves open Counts Two, Three, and Four of the complaint that allege violations of the Martin Act. Count Three also contends Harvey's behavior constituted common law fraud. Dismissal of the federal securities statutes destroys this Court's federal question jurisdiction but diversity jurisdiction over the parties is retained: Vorrius is a New Jersey resident and Harvey is a New York resident. 28 U.S.C. §§ 1331, 1332. Accordingly, I will dispose of the remaining state and common law issues raised in the complaint.

The Martin Act provides a remedy for defrauded investors and is to be "liberally construed ... to prevent all kinds of fraud in connection with the sale of securities and commodities and to defeat all related schemes whereby the public is exploited ...." *People v. Lexington Sixty-First Associates,* 38 N.Y.2d 588, 595, 345 N.E.2d 307,

---

4. The parties have not suggested which statutory definitions apply herein. Accordingly, I assume that the most likely definition, "participation" in an "investment contract" governs.

5. It may also be argued that Vorrius' one-to-one transaction does not constitute an investment in a "common venture." *Marine Bank v.*

*Weaver,* 455 U.S. at 559, 102 S.Ct. at 1225, supports this proposition.

6. This conclusion obviates any need to consider whether Harvey was a controlling person within the meaning of the securities laws.

311, 381 N.Y.S.2d 836, 840 (1976) (citations omitted). The Martin Act, the 1933 Act and the 1934 Act "are virtually identical in their design and scope, and the purpose for which they were enacted." *Gardner v. Lefkowitz,* 97 Misc.2d 806, 812, 412 N.Y.S.2d 740, 746 (N.Y.Sup.Ct.1978). Thus, dismissal of the complaint insofar as it relates to the federal securities laws also requires dismissal of plaintiff's Martin Act allegations.

 This leaves unresolved only plaintiff's contention in Count Three that Robert Harvey's conduct constituted common law fraud. In order to succeed under this Count, plaintiff must demonstrate Harvey's misrepresentation of a material fact, the falsity of Harvey's misrepresentation, scienter, reliance and damages. *See Mallis v. Bankers Trust Co.,* 615 F.2d 68, 80 (2d Cir. 1980), *cert. denied,* 449 U.S. 1123, 101 S.Ct. 938, 67 L.Ed.2d 109 (1981). There is no evidence to support an allegation that Harvey misrepresented a material fact. Vorrius' testimony that he was told Nelson Ghun was financially stable is incredible and belied by contradictory evidence. Nelson Ghun's precarious economic condition was evidenced not only by the $70,000 loan Nelson Ghun was forced to procure from Harvey but also by Vorrius' own testimony that Nelson Ghun sought participations to raise additional money. I also am convinced by Robert Harvey's credible testimony that Vorrius entered into his contract with Nelson Ghun with full knowledge of his commitment and the risks involved. Plaintiff's failure to prove Harvey misrepresented a material fact defeats his common law fraud claim. Accordingly, Count Three which alleges common law fraud is dismissed.

## CONCLUSION

In sum, the evidence at trial was insufficient to support any of the allegations in the complaint against Robert Harvey. Accordingly, judgment will enter for the defendant Robert Harvey. The Clerk shall enter judgment herein.