Walter J. PANFIL, Plaintiff,

v.

**ACC CORP. (f/k/a A.C. Teleconnect Corp.), Richard T. Aab, Robert F. Sykes, and Sykes Associates, a Partnership, Defendants.**

**No. CIV–90–212C.**

United States District Court, W.D. New York.

March 7, 1991.

Damon & Morey (William F. Savino, and Anthony J. Colucci, III, of counsel), Buffalo, N.Y., for plaintiff.

Harter, Secrest & Emery (Kenneth A. Payment, of counsel), Rochester, N.Y., for defendants.

CURTIN, District Judge.

## BACKGROUND

This case involves an allegation of securities fraud. Plaintiff, Walter J. Panfil, is the former president of Network Consultant's, Inc., a New York corporation involved in the telecommunications business. On November 30, 1984, Network Consultant's agreed to merge into A.C. Teleconnect Corp., a subsidiary of defendant ACC Corporation ("ACC"). As majority shareholder in Network Consultant's, Mr. Panfil received cash and a considerable number of shares in ACC from the merger. He was also appointed as a director of A.C. Teleconnect from 1984 to 1986.

On October 29, 1987, the Board of Directors of ACC, by unanimous written consent, adopted a stock repurchase plan whereby executive officers of ACC were authorized to purchase up to 400,000 shares of ACC common stock, at a price not exceeding $2.00 per share, the stock to be retired as treasury stock. Thereafter, Mr. Panfil sold 197,000 of his ACC shares to the three defendants in this case: 80,000

shares to ACC on October 29, 1987 at $1.625/share; 58,500 shares to Richard T. Aab, Chairman and Chief Executive Officer of ACC, on February 18, 1988 at $1.375/share; and 58,500 shares to Sykes Associates, Robert F. Sykes, General Partner and director of ACC, on February 18, 1988 at $1.375/share.

Mr. Panfil alleges that at the time these purchases were made, defendants knew that ACC "intended to pursue Rochester Telephone Company to facilitate a combination of these businesses." Item 6, ¶ 20 (proposed Amended Complaint). *See also id.*, ¶ 16; Item 7 (Panfil affidavit). Defendants admit that merger negotiations did occur between the two companies, but did not begin until sometime after Mr. Panfil sold the last of his shares. *See* Item 4 (Bittner and Drees affidavits). On November 18, 1988, a two-paragraph article appeared in the *Wall Street Journal* noting that ACC was "holding discussions with certain companies that have indicated an interest in acquiring it." Item 8, Exh. A. ACC stock, which had been trading generally at less than $3.00 per share, closed at $5.37 per share that day. Item 8, at 2. On December 5, 1988, Rochester Telephone and ACC signed a letter of intent to merge. Item 4, at 2. This merger was never consummated. *Id.*

Plaintiff claims that defendants' failure to inform Mr. Panfil of the "intent[ion] to pursue Rochester Telephone Company" prior to purchasing his stock violates § 9(a)(4) of the Securities Exchange Act of 1934 ("1934 Act"), 15 U.S.C. § 78i(a)(4); §§ 10(b) and 20(a) of the 1934 Act, 15 U.S.C. §§ 78j(b), 78t(a), and rule 10b–5, 17 C.F.R. § 240.10b–5 (1990) promulgated thereunder; § 1962(c) and § 1964(c) of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1962(c), 1964(c) ("RICO"); the New York General Business Law; and the common law. Defendants argue that their failure to inform Mr. Panfil of their alleged intentions, even if true, was not "material" under the 1934 Act. Defendants also argue that Mr. Panfil fails to state a RICO claim. Items 4, 12. The court chooses to address plaintiff's § 9(a)

claim. Defendants move to dismiss the complaint under Rules 12(c), 9(b) and 56 of the Federal Rules of Civil Procedure.

## DISCUSSION

### I. MOTION FOR JUDGMENT ON THE PLEADINGS

██In considering defendants' Rule 12(c) motion, the court must accept as true all of the facts, and the favorable inferences derived therefrom, alleged in the complaint. *Madonna v. United States*, 878 F.2d 62, 65 (2d Cir.1989); *Bloor v. Carro, Spanbock, Londin, Rodman & Fass*, 754 F.2d 57, 61 (2d Cir.1985). The court may not dismiss the case unless " 'the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " *Madonna*, 878 F.2d at 65 (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957)). *See also Bloor*, 754 F.2d at 61. Although it is within the court's discretion to consider additional materials and convert the motion to one for summary judgment, *Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 642 (2d Cir. 1988); *Falls Riverway Realty v. City of Niagara Falls*, 754 F.2d 49, 53 (2d Cir. 1985), the court finds that Mr. Panfil's affidavit does no more than reinforce the presumption to which he is already entitled, *i.e.*, that defendants intended to pursue ACC's merger with Rochester Telephone before they bought his shares. Accordingly, the case will be considered on the pleadings. *See State Bank of India v. Walter E. Heller & Co.*, 655 F.Supp. 326, 327 (S.D.N.Y.1987).

### II. SECTIONS 10(b) and 20(a) of the 1934 ACT

Plaintiff argues that the defendants' failure to inform him of their intention to pursue merger discussions with Rochester Telephone Company prior to their purchase of his stock violates §§ 10(b) and 20(a) of the 1934 Act, 15 U.S.C. §§ 78j(b), 78t(a), and rule 10b–5, 17 C.F.R. § 240.10b–5 (1990) promulgated thereunder. Rule 10b–5 makes it unlawful for any person

(b) To make any untrue statement of a material fact *or to omit to state a mate-*

rial fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading ... in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b–5 (emphasis added). Section 20(a) extends 10b–5 liability to all those directly or indirectly in control of any party liable under 10b–5. 15 U.S.C. § 78t(a).

■ For liability to arise from the *omission* of material nonpublic information under this statute, the charged party must have an affirmative duty to disclose this information. *Dirks v. SEC,* 463 U.S. 646, 654, 103 S.Ct. 3255, 3261, 77 L.Ed.2d 911 (1983); *Chiarella v. United States,* 445 U.S. 222, 235, 100 S.Ct. 1108, 1118, 63 L.Ed.2d 348 (1980); *National Union Fire Ins. Co. v. Turtur,* 892 F.2d 199, 207 (2d Cir.1989); *Moss v. Morgan Stanley, Inc.,* 719 F.2d 5, 12 (2d Cir.1983), *cert. denied sub nom., Moss v. Newman,* 465 U.S. 1025, 104 S.Ct. 1280, 79 L.Ed.2d 684 (1984). This duty arises from the existence of a fiduciary relationship. *Dirks,* 463 U.S. at 654, 103 S.Ct. at 3261; *Chiarella,* 445 U.S. at 227–35, 100 S.Ct. at 1114–18. The relationship between shareholders of a corporation and corporate officers or directors "who have obtained confidential information by reason of their position with that corporation" is a fiduciary relationship. *Id.* at 228, 100 S.Ct. at 1114–15. *See also Dirks,* 463 U.S. at 654, 103 S.Ct. at 3261. The officer or director must therefore disclose material facts before trading on them. *Id.*

■ This duty, however, extends only to *material* facts. Rule 10b–5, 17 C.F.R. § 240.10b–5; *Basic Inc. v. Levinson,* 485 U.S. 224, 238, 108 S.Ct. 978, 986–87, 99 L.Ed.2d 194 (1988). In *Basic,* the Supreme Court articulated the test for determining whether a given fact is material in the context of pre-merger negotiations. " '[T]here must [have been] a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available.' " *Id.* at 231–32, 108 S.Ct. at 983 (quoting *TSC Indus., Inc. v. Northway,*

*Inc.,* 426 U.S. 438, 449, 96 S.Ct. 2126, 2132, 48 L.Ed.2d 757 (1976)). This

'will depend at any given time upon a balancing of both the indicated probability that the event will occur and the anticipated magnitude of the event in light of the totality of the company activity.'

*Id.* 485 U.S. at 238, 108 S.Ct. at 987 (quoting *SEC v. Texas Gulf Sulphur Co.,* 401 F.2d 833, 849 (2d Cir.1968) (en banc), *cert. denied sub nom. Coates v. SEC,* 394 U.S. 976, 89 S.Ct. 1454, 22 L.Ed.2d 756 (1969)). This probability/magnitude balancing test is fact-specific. *Id.* 485 U.S. at 239–40, 108 S.Ct. at 987–88.

To assess the probability that a merger will take place, the Court suggested that a court look to "indicia of interest in the transaction at the highest corporate levels." *Id.* at 239, 108 S.Ct. at 987. This would include "board resolutions, instructions to investment bankers, and actual negotiations between principals or their intermediaries...." *Id.* The Court also held that "trading (and profit making) by insiders can serve as *an* indication of materiality." *Id.* at 240 n. 18, 108 S.Ct. at 988 n. 18. *See also SEC v. Geon Indus., Inc.,* 531 F.2d 39, 48 (2d Cir.1976) (timing and size of stock purchases by insiders important); *SEC v. Shapiro,* 494 F.2d 1301, 1307 (2d Cir.1974) (same); *Texas Gulf Sulphur,* 401 F.2d at 851 (same); *Hartford Fire Ins. Co. v. Federated Dep't Stores,* 723 F.Supp. 976, 986 (S.D.N.Y.1989) (same). This fact, however, does not change the test of materiality. *Basic,* 485 U.S. at 240 n. 18, 108 S.Ct. at n. 18. Other courts have found important the degree to which an insider can bring about the proposed merger. *See Hartford,* 723 F.Supp. at 985 (discussing cases); *Taylor v. First Union Corp. of S.C.,* 857 F.2d 240, 244 (4th Cir.1988), *cert. denied,* 489 U.S. 1080, 109 S.Ct. 1532, 103 L.Ed.2d 837 (1989) (fact that merger contingent on legislation renders preliminary negotiations not material); *Thomas v. Duralite Co.,* 524 F.2d 577, 585 (3d Cir.1975) (initial merger contacts material where additional merger negotiations deliberately postponed by key corporate officer until after stock purchase completed). *Cf.*

*Kronfeld v. Trans World Airlines, Inc.,* 832 F.2d 726, 735 (2d Cir.1987), *cert. denied,* 485 U.S. 1007, 108 S.Ct. 1470, 99 L.Ed.2d 700 (1988) (parent corporation's ability to control timing of sale of subsidiary important to section 11 disclosure).

To assess a proposed merger's magnitude, the Court suggested looking to "the size of the two corporate entities and of the potential premiums over market value." *Basic,* 485 U.S. at 239, 108 S.Ct. at 987. The Court quoted with approval the reasoning of *Geon Industries:*

> Since a merger in which it is bought out is the most important event that can occur in a small corporation's life, to wit, its death, we think that inside information, as regards a merger of this sort, can become material at an earlier stage than would be the case as regards lesser transactions—and this even though the mortality rate of mergers in such formative stages is doubtless high.

*Basic,* 485 U.S. at 238, 108 S.Ct. at 987 (quoting *Geon Indus.,* 531 F.2d at 47–48). The Court concluded that "[n]o particular event or factor short of closing the transaction need be either necessary or sufficient by itself to render merger discussions material." *Id.* 485 U.S. at 239, 108 S.Ct. at 987.

In this case, plaintiff alleges that defendants' failure to inform him that ACC *"intended to pursue* Rochester Telephone Company to facilitate a combination of these businesses," Item 6, ¶ 20 (proposed Amended Complaint) (emphasis added), was a material fact. Significantly, this allegation is a retreat from plaintiff's original complaint, which claimed that defendants "knew that ACC Corp. *was conducting discussion and negotiation* with Rochester Telephone Company that may have resulted in the combination of these business [sic]." Item 1, ¶ 20 (Complaint) (emphasis added). This retreat severely weakens plaintiff's claim. As one court reasoned:

> the more tentative the discussions the less useful such information will be to a reasonable investor in reaching a decision. Information of speculative and tentative discussions is of dubious and marginal significance to that decision. To hold otherwise would result in endless and bewildering guesses as to the need for disclosure, operate as a deterrent to the legitimate conduct of corporate operations, and threaten to 'bury the shareholders in an avalanche of trivial information'; the very perils that the limit on disclosure imposed by the materiality requirement serves to avoid.

*Taylor v. First Union Corp.,* 857 F.2d at 244–45. Here, there were not "tentative" discussions; there were *no discussions. See Basic,* 845 U.S. at 239 ("actual negotiations" evidence of probability of merger; "no particular event ... need be either necessary or sufficient by itself to render merger *discussions* material"); *Hartford Fire Ins.,* 723 F.Supp. at 987 (no suitor had contacted target or made an offer to buy; board had taken no action to show interest in being acquired); *Jackvony v. Riht Financial Corp.,* 873 F.2d 411, 413–14, 417 (1st Cir.1989) (series of statements and tentative probes regarding possibility of being acquired not material); *In re General Motors Class E Stock Buyout Sec. Litig.,* 694 F.Supp. 1119, 1128 (D.Del.1988) (unilateral decision of management to spin off subsidiary and relationship with high-profile director of subsidiary prior to negotiations not material). The mere "intention" to pursue a possible merger at some time in the future, without more, is simply not a material fact under rule 10b–5. The probability of merger prior to any contact with potential suitors—prior to any evidence that a suitor is in any way interested in merger— is too remote. *See List v. Fashion Park, Inc.,* 340 F.2d 457, 464 (2d Cir.), *cert. denied,* 382 U.S. 811, 86 S.Ct. 23, 15 L.Ed.2d 60 (1965) (insider's knowledge that company's board had resolved to seek a merger or sale and had been informed that unknown purchaser was interested in acquiring company not material). Plaintiff cannot rely on the fact that subsequent merger discussions were *held* to *bolster* his claim. "The probability of a transaction occurring must be considered in light of the facts as they then existed, not with the hindsight knowledge that the transaction

was or was not completed." *In re General Motors,* 694 F.Supp. at 1127.

This conclusion is proper on the present motion. *In re General Motors,* 694 F.Supp. at 1128 (granting motion to dismiss). *See also Jackvony,* 873 F.2d at 417 (upholding directed verdict); *Taylor,* 857 F.2d at 244 (reversing jury verdict and directing entry of judgment for defendants); *Hartford,* 723 F.Supp. at 989–90 (granting summary judgment). There is no doubt that the omissions alleged by plaintiff are not material as a matter of law. *See TSC Indus., Inc. v. Northway, Inc.,* 426 U.S. at 450, 96 S.Ct. at 2132 (only where "reasonable minds cannot differ on the question of materiality" is this issue appropriately decided as a matter of law); *United States v. Victor Teicher & Co.,* 726 F.Supp. 1424, 1432 (S.D.N.Y.1989) ("where there is doubt about materiality, leave it for the jury").

Accordingly, plaintiff's claims under §§ 10(b) and 20(a) of the 1934 Act are dismissed.

III. SECTION 9(a)(4) of the 1934 ACT

■ Plaintiff also asserts a claim under § 9(a)(4) of the 1934 Act. 15 U.S.C. § 78i(a)(4). This section makes it unlawful for any person offering to purchase a security

> to make, regarding any security registered on a national securities exchange, for the purpose of inducing the purchase or sale of such security, any statement which was at the time and in the light of the circumstances under which it was made, false or misleading with respect to any *material fact,* and which he knew or had reasonable ground to believe was so false or misleading.

*Id.* (emphasis added). This section closely parallels Rule 10b–5. *Ceres Partners v. Gel Assoc.,* 918 F.2d 349, 361 (2d Cir.1990). *See also Chemetron Corp. v. Business Funds, Inc.,* 682 F.2d 1149, 1160–63 (5th Cir.1982), *vacated on other grounds,* 460 U.S. 1007, 103 S.Ct. 1245, 75 L.Ed.2d 476 (1983), *on remand,* 718 F.2d 725, 728 (5th Cir.1983). Rule 10b–5 and § 9(a)(4) both require the misstatement or omission of a

material fact. 15 U.S.C. §§ 78i(a)(4), 78j(b); 17 C.F.R. § 240.10b–5. *See also Chemetron,* 682 F.2d at 1161. The *Chemetron* court concluded that

> Rule 10b–5(b) therefore requires no *additional* proof of facts creating a *higher* burden of proof when compared to subsection 9(a)(4). In fact, Rule 10b–5 creates a lower burden of proof than does subsection 9(a)(4) and contains no elements that compensate for this change.

*Id.* at 1162. This conclusion was reaffirmed on remand. *Chemetron,* 718 F.2d at 728.

Given the parallel requirements of these statutes, plaintiff's failure to show the omission of a material fact under rule 10b–5, *see supra,* also defeats his claim under § 9(a)(4). 15 U.S.C. §§ 78i(a)(4), 78j(b). Accordingly, his § 9(a)(4) claim is also dismissed.

IV. RICO

Plaintiff alleges that defendants are liable under sections 1962(c) and 1962(d) of the Racketeer Influenced and Corrupt Organizations Act ("RICO"). 18 U.S.C. §§ 1962(c), (d). The statutes state:

> (c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

> (d) It shall be unlawful for any person to conspire to violate any of the provisions of subsections (a), (b), or (c) of this section.

*Id.* The Supreme Court has interpreted § 1962(c) to require four elements: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. The plaintiff must, of course, allege each of these elements to state a claim." *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 496, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985). *See also Moss v. Morgan Stanley,* 719 F.2d at 17.

"Racketeering activity" includes any of a number of criminal acts, including mail fraud, 18 U.S.C. § 1341, and wire fraud, 18 U.S.C. § 1343, which plaintiff has alleged here. 18 U.S.C. § 1961(1)(B). *See Procter & Gamble Co. v. Big Apple Indus. Bldgs., Inc.*, 879 F.2d 10, 15 (2d Cir.1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 723, 107 L.Ed.2d 743 (1990). Plaintiff has also alleged "fraud in the sale of securities," which is covered under RICO. 18 U.S.C. § 1961(1)(D). *See Moss*, 719 F.2d at 17. This raises the question whether plaintiff's allegation that defendants failed to disclose their intent to pursue a merger with Rochester Telephone Company constituted fraud under these statutes.

### A. *Securities Fraud*

Plaintiff alleges securities fraud as one basis for defendants' "racketeering activity." For the reasons set forth in sections II and III of this opinion, however, plaintiff has failed to allege a violation of §§ 10(b), 20(a), or 9(a)(4) of the 1934 Act. The court now holds that for a similar reason plaintiff's claims of common law fraud must also be dismissed.

■ Under New York law, five elements are required to prove fraud: "misrepresentation of a material fact, falsity of that representation, *scienter*, reliance and damages." *Mallis v. Bankers Trust Co.*, 615 F.2d 68, 80 (2d Cir.1980), *cert. denied*, 449 U.S. 1123, 101 S.Ct. 938, 67 L.Ed.2d 109 (1981). *See Blusal Meats, Inc. v. United States*, 638 F.Supp. 824, 832 (S.D.N.Y.1986), *aff'd*, 817 F.2d 1007 (2d Cir. 1987); *Vorrius v. Harvey*, 570 F.Supp. 537, 542 (S.D.N.Y.1983); *E.F. Hutton & Co. v. Penham*, 547 F.Supp. 1286, 1297 (S.D.N.Y.1982); *Pittsburgh Coke & Chem. Co. v. Bollo*, 421 F.Supp. 908, 924 (E.D.N.Y.1976), *aff'd*, 560 F.2d 1089 (1977) (noting that "requirements [of common law fraud] are if anything more rigorous than the findings required for a Rule 10b–5 claim"); *Jo Ann Homes at Bellmore, Inc. v. Dworetz*, 25 N.Y.2d 112, 302 N.Y.S.2d 799, 803, 250 N.E.2d 214, 216–17 (1969). The element that plaintiff has failed to prove is misrepresentation by defendants

of a *material* fact. Although defendants were in a fiduciary relationship with plaintiff as directors and officers of ACC, and thus had a duty to disclose inside information, *Dirks v. SEC*, 463 U.S. at 654, 103 S.Ct. at 3261; *Chiarella v. United States*, 445 U.S. at 228, 100 S.Ct. at 1114–15, this duty extends only to material facts. *Id.*; RESTATEMENT (SECOND) OF TORTS § 551(2), comment c (1977) ("A person under the duty [to disclose because of a fiduciary relationship] is required to disclose only those matters that he has reason to know will be regarded by the other as important in determining his course of action in the transaction in hand."). For the reasons stated previously, this court concludes that plaintiff has failed to allege a material omission of fact by defendants. His claims of common law fraud therefore fail. *Vorrius*, 570 F.Supp. at 542.

■ Plaintiff also alleges securities fraud under sections 352–c and 339–a of New York's General Business Law. N.Y.Gen.Bus.Law § 352–c (McKinney 1984); N.Y.Gen.Bus.Law § 339–a (McKinney 1988). Taking § 352–c first, the New York Court of Appeals has recently held that although "an omission as well as a concealment or suppression of information may be actionable as a fraudulent practice" under the section, *State v. Rachmani Corp.*, 71 N.Y.2d 718, 530 N.Y.S.2d 58, 62, 525 N.E.2d 704, 708 (1988), such omission must be of a material fact. *Id.* The court then went on to adopt the test for materiality articulated in *Basic*, and set forth above. *Id.* at 63, 525 N.E.2d at 709. *See also E.F. Hutton & Co.*, 547 F.Supp. at 1297 (§ 352–c requires misrepresentation of material fact). Again, plaintiff's failure to allege omission of a material fact defeats his § 352–c claim. Similarly, the § 339–a claim must be dismissed. The statute itself requires the person to be held liable to have made a statement with "reasonable ground to believe that any *material* representation, prediction or promise made in such statement or advertisement is false...." N.Y.Gen.Bus.Law § 339–a. No material misstatements or omissions were alleged here. Thus, this cause of action must also be dismissed. *Cf. Ra-*

*chmani Corp.,* 530 N.Y.S.2d at 62–63, 525 N.Y.S.2d at 708–09.[1]

Accordingly, plaintiff's allegations of securities fraud must all be dismissed. "Therefore, since the complaint contains no *valid* allegation of 'fraud,' to underpin the 'predicate acts' of 'racketeering,' " *Moss,* 719 F.2d at 18–19, plaintiff cannot maintain his RICO claim by reference to securities fraud. *See Sedima,* 473 U.S. at 496, 105 S.Ct. at 3284. We turn now to the question whether he can sustain a RICO cause of action based on allegations of mail or wire fraud.

#### B. *Mail and Wire Fraud*

 The mail and wire fraud statutes both require that defendant engage in a "scheme or artifice to defraud." 18 U.S.C. §§ 1341, 1343. A plaintiff need not suffer an actual fraud, *United States v. King,* 860 F.2d 54, 55 (2d Cir.1988), but the scheme to defraud must be intentional. *O'Malley v. New York City Transit Auth.,* 896 F.2d 704, 706 (2d Cir.1990); *Wanamaker v. Columbian Rope Co.,* 740 F.Supp. 127, 140 (N.D.N.Y.1990). The key element for this case, once again, is that for there to be a scheme to defraud the defendant must have a duty to refrain from taking the actions alleged to constitute such scheme. There is simply no duty to reveal non-material facts before trading in securities. This court has painstakingly detailed this principle with respect to each "fraud" alleged in this case. The principle applies equally to mail and wire fraud. *United States v. London,* 753 F.2d 202, 206–07 (2d Cir.1985); *United States v. Regent Office Supply Co.,* 421 F.2d 1174, 1182 (2d Cir. 1970) ("a wrong has been suffered [from mail fraud] when a man is deprived of his chance to bargain 'with the facts before him' where the absent facts are facts *mate-rial* to the bargain he is induced thereby to enter." (Emphasis added)).

Accordingly, plaintiff's RICO claims are dismissed for failure to allege any "racketeering activity" under the statute. *Sedima,* 473 U.S. at 496, 105 S.Ct. at 3285.[2]

### V. STATE LAW CLAIMS

Plaintiff's causes of action under the New York General Business Law, Item 1, ¶¶ 57–60, and common law fraud, *id.,* ¶¶ 72–74, are dismissed for the reasons set forth in section IV. Plaintiff also alleges causes of action for negligent misrepresentation and breach of fiduciary duty, *id.* ¶¶ 75–79, and negligence, *id.,* ¶¶ 80–82. Although this court has discretionary authority to hear these pendent state claims, *see United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), it declines to do so. *See Port Chester Nursing Home v. Axelrod,* 732 F.Supp. 440, 446 (S.D.N.Y.1990); *Friedman v. Perales,* 616 F.Supp. 1363, 1367 (S.D.N.Y.1985).

### CONCLUSION

Therefore, judgment shall be granted to defendants on the motion to dismiss the federal claims, the New York General Business Law claim, and the common law fraud claim. The court refuses to pass upon the remaining state claims—for negligent misrepresentation, breach of fiduciary duty and negligence.

So ordered.

---

**1.** It should be noted also that there is no private cause of action under either of these provisions. *CPC Int'l Inc. v. McKesson Corp.,* 70 N.Y.2d 268, 519 N.Y.S.2d 804, 806–08, 514 N.E.2d 116, 118–20 (1987) (discussing § 352–c); *Merrill Lynch Pierce Fenner & Smith, Inc. v. Xanthoudakis,* 140 Misc.2d 595, 531 N.Y.S.2d 487, 488 (N.Y.Civ. Ct.1988) (discussing § 339–a).

**2.** Although *Sedima* focuses on § 1962(c) of RICO, plaintiff's claims under the conspiracy provisions of § 1962(d) must also fail. Because the underlying acts alleged by plaintiff were not "racketeering activity," defendants did not conspire to engage in "racketeering activity." 18 U.S.C. § 1962(d).