TAB PARTNERSHIP and R. Michael Bowe, Plaintiffs,

v.

**GRANTLAND FINANCIAL CORPORATION and Laird A. Mooney, Defendants.**

**No. 92 Civ. 6332 (AGS).**

United States District Court, S.D. New York.

Nov. 4, 1994.

---

Dahan & Nowick, New York City, for plaintiffs.

Bodian & Eames, New York City, for defendants.

## *OPINION AND ORDER*

SCHWARTZ, District Judge:

Pending before this Court is Defendant Laird A. Mooney's ("Defendant") motion to dismiss the plaintiffs' claims under the Securities Act of 1933 § 12(2) and the Securities Exchange Act of 1934 § 10(b).[1] For the reasons that follow, Defendant's motion to dismiss is granted.

## FACTS

The facts relating to this case are set forth in the of Judge Conboy dated June 30, 1993 ("Order"), discussed *infra.* Familiarity with the Order is assumed.

## PROCEDURAL HISTORY OF THIS ACTION

On October 30, 1992, Defendant filed a motion to dismiss the complaint in this action, or, in the alternative, to transfer the action to the Southern District of California. In his Order, Judge Conboy: (1) granted Defendant's motion to dismiss the plaintiffs' federal securities law claims; (2) denied Defendant's motion to dismiss plaintiffs' state law claims; (3) denied Defendant's motion to transfer venue; and (4) granted both parties leave to replead. Plaintiffs filed an amended complaint[2] ("Amended Complaint") on July 22, 1993, alleging that the defendants had attempted to interest other members of the general public in investing in the CD Rollover Program and that other investors had, in fact, participated in the Program by purchasing certificates of deposit ("CDs"). Amended Complaint at ¶ 14(d), 16.

1. Jurisdiction of this Court is predicated upon diversity as well as federal question. Defendants' motion is directed solely at plaintiffs' federal securities laws claims. Accordingly, irrespective of the outcome of this motion, plaintiffs' claims arising under state law remain before this Court because the parties agree that there exists diversity of citizenship among the parties and an amount in controversy that exceeds $50,000 exclusive of interests and costs.

## ANALYSIS

### I. Plaintiffs' Loan Is Not a Security

█ The June 30, 1993 Order held that the agreement between the plaintiffs and the defendants did not constitute a security. Order, page 4. Under the Supreme Court's definition in *Marine Bank v. Weaver,* 455 U.S. 551, 560, 102 S.Ct. 1220, 1225, 71 L.Ed.2d 409, 417 (1982), an agreement is not a security if the defendants "distributed no prospectus to the [plaintiffs] or to other potential investors," the agreement they negotiated "was not designed to be traded publicly," and the agreement was negotiated one-on-one between the parties. More precisely, Judge Conboy determined that the agreement in this action was arrived at through one-on-one negotiation and that plaintiffs did not allege that the agreement would be traded publicly or that a prospectus would be distributed.

█ Plaintiffs now contend that the new allegation of defendants' attempts to interest others to invest in the Program and the fact that other investors had, in fact, bought CDs indicates that the agreement at issue here is a security under the *Marine Bank* definition. We disagree. It remains undisputed that the agreement was arrived at through one-on-one negotiation. Federal securities laws are not properly invoked where a loan results from direct negotiations between the parties. *Vorrius v. Harvey,* 570 F.Supp. 537 (S.D.N.Y.1983); *see also Marine Bank,* 455 U.S. at 559–60, 102 S.Ct. at 1225. Plaintiffs, moreover, have failed to allege that defendants intended to trade the agreement publicly or that they would distribute a prospectus to investors. Plaintiffs' use of the word "investor" is not a sufficient showing that the defendants intended to trade this agreement

2. In his Order, Judge Conboy declined to transform the initial motion to dismiss into a motion for summary judgment although both parties had submitted affidavits either in support or in opposition to the motion including matter outside the four corners of the pleadings. *See Fonte v. Board of Managers of Continental Towers Condominium,* 848 F.2d 24, 25 (2d Cir.1988). We again treat this purely as a motion to dismiss. *See Fort Wayne Telsat v. Entertainment & Sports Programming Network,* 753 F.Supp. 109, 113 n. 4 (S.D.N.Y.1990).

publicly. The agreement does not qualify as a security. Accordingly, Defendant's motion to dismiss the federal securities claims is granted.

## II. Even Assuming that the Agreement is a Security, the Plaintiffs' Securities Claims are Time Barred

### a. Plaintiffs' § 12(2) Securities Claim Is Time Barred

■ The statute of limitations for securities fraud claims under the Securities Act of 1933 § 12(2) is the lesser of one year after the discovery of the untrue statement or omission, or three years after the sale of the security. *See* 15 U.S.C. § 77m. A complaint asserting a Section 12(2) claim "must set forth

(1) the time and circumstances of the discovery of the fraudulent statement;

(2) the reasons why it was not discovered (if more than one year has lapsed since the making of the fraudulent statement); and

(3) the diligent efforts which plaintiff undertook in making or seeking such discovery."

*In re Integrated Resources Real Estate Limited Partnerships Securities Litigation,* 815 F.Supp. 620, 631 (S.D.N.Y.1993).

■ The one-year period of the statute of limitations runs from the time when the plaintiffs had actual knowledge of the defendant's fraud, or "knowledge of facts which in the exercise of reasonable diligence should have led to actual knowledge." *Robertson v. Seidman & Seidman,* 609 F.2d 583, 587 (2d Cir.1979) (quoting *Berry Petroleum Co. v. Adams & Peck,* 518 F.2d 402, 410 (2d Cir. 1975)); *see also Menowitz v. Brown,* 991 F.2d 36, 41–42 (2d Cir.1993). The appropriate test for determining the time at which the alleged fraud should have been discovered with reasonable diligence is an "objective one", implicating the concepts of inquiry notice and constructive knowledge. *Armstrong v. McAlpin,* 699 F.2d 79, 88 (2d Cir.1983); *In re Integrated Resources, supra,* 815 F.Supp. at 637–38. The applicable test involves a two-tiered analysis. First, we must determine whether at some earlier time the circumstances were such as "to suggest to a person of ordinary intelligence the probability that he [had] been defrauded." *Armstrong, supra,* 699 F.2d at 88. To trigger the underlying duty to inquire, a defendant must establish that the plaintiff acquired information that suggested the probability and not merely the possibility that fraud occurred. *See Id.* This information places a plaintiff on inquiry notice of potential legal claims against the defendant. Second, if a plaintiff is placed on inquiry notice but omits to investigate those facts which demand inquiry, then knowledge of the fraud will be imputed to him if an inquiry into the circumstances surrounding his investment "would have developed the truth". *Id; see also Lenz v. Associated Inns and Restaurants,* 833 F.Supp. 362, 371 (S.D.N.Y.1993) (Conboy, J.) (if a plaintiff fails "to exercise reasonable diligence in discharging that duty to inquire into fraud, the court is compelled to impute constructive knowledge of the fraud to plaintiff").

The Court recognizes that the question of whether a plaintiff exercised reasonable diligence is usually a question of fact for the jury to decide. *See Intre Sport Ltd. v. Kidder, Peabody & Co.,* 625 F.Supp. 1303, 1310 (S.D.N.Y.1985), aff'd without opinion, 795 F.2d 1004 (2d Cir.1986), vacated on other grounds, 482 U.S. 922, 107 S.Ct. 3203, 96 L.Ed.2d 690 (1987). Nonetheless, "where the underlying facts are undisputed, even factually-based issues may be decided as a matter of law." *Maggio v. Gerard Freezer & Ice Co.,* 824 F.2d 123, 128 (1st Cir.1987). We confront such a record here.

■ The Amended Complaint indicates that on June 27, 1991, the Bank liquidated plaintiffs' CDs. The instant action was filed on August 20, 1992, over a year later. Plaintiffs contend that they acquired knowledge of potential legal claims against the defendants only on or about February 24, 1992 when they were able to obtain a copy of Defendant Mooney's resignation letter which contained descriptions of the fraudulent activities. In addition, plaintiffs attribute the delay in their awareness of the fraud until February of 1992 to the defendants' fraudulent concealment of their activities. Specifically, plaintiffs allege that in late June of 1991, soon after the Bank liquidated their CDs, Faghel-

la advised them that everything he had said was true, that the Bank's liquidation was based on an unusual situation, and that the Bank would reverse the action. Plaintiffs allege that throughout the fall of 1991, Faghella continued to assure them that the Bank would reverse its action, and they believed these assurances. For the foregoing reasons, plaintiffs contend the statute of limitations was tolled and the one-year limitation has not run. We disagree.

■ First, when the Bank liquidated their CDs in June of 1991, plaintiffs should have known that the defendants had defaulted on their loans with the Bank, contrary to their agreement. This placed plaintiffs on inquiry notice. Such a development should have suggested to a person of ordinary intelligence, especially to plaintiffs [3], "the probability that [they] had been defrauded." *Armstrong, supra*, 699 F.2d at 88. Plaintiffs knew that their CDs were collateral for the loans to defendants, and thus, the Bank's liquidation of the CDs suggested problems with the defendants' credit. In response to this inquiry notice, plaintiffs did nothing for eight months, from late June of 1991 to February of 1992. The exercise of reasonable diligence, in response to the inquiry notice, would have led plaintiffs to the knowledge that Grantland had drawn the line of credit without having a written back-up commitment from established third parties or that Grantland did not pay down the line of credit with the proceeds received from the sale of loans, all contrary to defendant Mooney's and Faghella's statements. Accordingly, we impute constructive knowledge of the fraud to plaintiffs as of June 27, 1991.

Plaintiffs' allegations of fraudulent concealment do not disturb this finding. The defense of fraudulent concealment does not dis-

charge the duties of due diligence and inquiry. This Court must still determine whether the information plaintiffs *did* receive, despite the defendants' activities, sufficed to trigger a duty to inquire. *See Hupp v. Gray*, 500 F.2d 993, 997 (7th Cir.1974); *Lenz, supra*, 833 F.Supp. at 371. Plaintiffs allege only that Faghella fraudulently assured them that the Bank would reverse its action. This allegation is insufficient on several counts. Verbal assurances are insufficient to constitute fraudulent concealment. *Zola I*, 685 F.Supp. at 366–367. The court in *In re Integrated Resources* explained:

> "[N]either reassurances accompanying the relevant notice nor the continued failure to disclose the facts allegedly misrepresented in the first place, relieves the plaintiff of his duty to undertake reasonable inquiry or tolls the statute of limitations."

815 F.Supp. at 640. In addition, plaintiffs failed to respond to the substance of Faghella's representations. An inquiry could have been made anytime during the months of July and August of 1991. Yet, plaintiffs chose to do nothing, completely abdicating their duty to investigate. The doctrines of inquiry notice and constructive knowledge evolved precisely to avoid tolling a statute for a plaintiff's "leisurely discovery of the full details of the alleged scheme." *Klein v. Bower*, 421 F.2d 338, 343 (2d Cir.1970). In light of the foregoing, we reiterate our conclusion that knowledge of the fraud should be imputed to plaintiffs as of June 27, 1991. Accordingly, plaintiffs' Section 12(2) claims are dismissed as time barred.

**b. Plaintiffs' § 10(b) Securities Claim Is Time Barred**

■ The statute of limitations for securities fraud claims under the Securities Ex-

---

**3.** It is well settled that a court may consider the sophistication of a plaintiff investor in evaluating issues of inquiry notice, fraudulent concealment, and constructive knowledge because an investor's sophistication affects the extent to which a court may properly conclude that a particular event should have influenced that investor to inquire into the likelihood of fraud involving his or her investment. *See Zola I*, 685 F.Supp. 354, 370 n. 18 (S.D.N.Y.1988) (noting educational level and investment sophistication of plaintiffs); *Marlow v. Gold*, 1991 WL 107268 at *9 (S.D.N.Y.

1991) (emphasizing that plaintiff was sophisticated rather than a "stereotypical naive" investor).

To that end, we note that plaintiff Bowe is a former Managing Director of Morgan Stanley & Co. and that plaintiff Armano has been involved in real estate and corporate investment banking for 21 years and is registered with the National Association of Securities Dealers and the Securities and Exchange Commission to conduct secured transactions. These men were hardly "stereotypical naive" investors.

change Act of 1934 § 10(b) also runs within one year of the discovery of the fraud or within three years after such fraud. *See Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson,* 501 U.S. 350, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991). The shorter of the one-year or three-year periods applies. *In re General Dev't Corp. Bond Litigation,* 800 F.Supp. 1128, 1135 (S.D.N.Y.1992), *aff'd sub nom., Menowitz v. Brown,* 991 F.2d 36 (2d Cir.1993).

For the reasons detailed *supra* at 810–811, plaintiffs' Section § 10(b) claims are also dismissed as time barred.

## CONCLUSION

For the above reasons, Defendant Mooney's motion to dismiss plaintiffs' federal securities claims is granted.

SO ORDERED.